# McIlvaine *versus* Lantz.

A young stallion straying upon the highway was the cause of an injury to a person driving thereon. In an action against the owner of the animal to recover damages for the injury, wherein the negligence alleged on the part of the defendant was the failure properly to confine it,—*Held*, that, having regard to the well-known propensities of young stallions, even if the fence was such as was common among farmers and usually considered safe, the court properly submitted the question to the jury, whether, under the particular circumstances, the fence was sufficient.

May 16th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Lancaster county :* Of January Term 1882, No. 88.

Case, by David Z. Lantz against George D. McIlvaine and E. P. M. McIlvaine, to recover damages for loss of service and for medical fees, nursing, etc., of his wife Nancy D. Lantz, who was injured through the alleged negligence of the defendants. Plea, not guilty.

On the trial, before LIVINGSTON, P. J., it was proved that while Mrs. Nancy Lantz was driving along a public road in a wagon with a Mrs. Kauffman, on June 5th 1879, a young stallion belonging to the defendant, which was straying at large on the

[McIlvaine v. Lantz.]

public road, attacked the horse in the wagon, first on one side
and then on the other, by rearing up and mounting him, thereby
alarming the occupants of the wagon. Mrs. Kauffman, who
was driving, requested Mrs. Lantz to take the whip and drive
the stallion away. Mrs. Lantz undertook to do so, but in get-
ting out of the wagon, fell and broke her leg.

The evidence showed that the defendants kept the stallion
loose in their barnyard, which was inclosed by a fence such as
farmers commonly provide to confine their stock, and that on
the day in question the stallion and also another colt jumped
the fence into a farm lane, which gave them free access to the
public road. Two carpenters, who were working for the defend-
ants, saw the colts escape, but no effort was made to capture
them for some hours. The point on the road where the acci-
dent took place, was about two miles from the defendants' farm.
On a previous occasion the same stallion had been found stray-
ing on the highway.

The plaintiff presented, inter alia, the following point:—

9. The fact that this stallion was in the spring of his
second year, that he was at large before and on the day of this
accident, and that the injury to the plaintiff complained of was
the result of his so having been and being at large raises a pre-
sumption of negligence, which the defendants are bound to rebut.

Answer. If the jury find from the evidence that the colt
was of that age at the time of the accident, and that as a class
such colts have vicious propensities, and are known by reason
thereof to be dangerous, and that he was at large on the public
highway prior to the day of the accident, at different times, and
that the injury complained of was the result of and caused by
his being at large on the public highway, his being at large
under such circumstances would raise a presumption of
negligence, and entitle plaintiff to recover, unless such presump-
tion be rebutted by defendants, by showing they had used
proper precautions to prevent his being at large. (First assign-
ment of error.)

The defendants presented the following points:

7. The defendants are not liable in this action unless they,
before the happening of the accident complained of, had
knowledge that their horse was vicious, and neglected to use
the ordinary means of prudent men to confine him; and there
being no proof that they had such knowledge, or neglected to
use such means, the plaintiff cannot recover.

Answer. If the defendants' stallion belonged to a class
generally known to be vicious, and was of an age when his
vicious propensities were most likely to present themselves,
they would be obliged to use such precautions as would
ordinarily prevent him from being loose, at large, on the

public highway, without special notice of viciousness in the horse. The jury will say whether they used such precautions or not. (Second assignment of error.)

8. If the jury believe that at the time the defendants' horse broke out of their barnyard, it was inclosed by such a fence as is common among farmers, and usually considered sufficient and safe to confine the farm stock, including such a horse as that of the defendants, the defendants were not guilty of negligence, and the plaintiff cannot recover.

Answer. Refused. It will be for the jury to say whether this fence, described by the witnesses, around defendants' barnyard, was sufficient and safe for the keeping in of such animals as the stallion spoken of; if it was, and defendants were in no default in his getting out, plaintiff cannot recover. (Third assignment of error.)

The court left to the jury the questions of negligence and contributory negligence.

Verdict for the plaintiff for $500 and judgment thereon. The defendants took this writ of error, assigning for error, inter alia, the answers to plaintiffs' and defendants' points, above quoted.

*H. M. North* and *P. D. Baker*, for the plaintiffs in error.— There was no evidence of negligence on the part of the defendants. The barnyard fence was such as is commonly used by prudent farmers, who raise stock, including stallions. The breaking or jumping of an ordinarily safe fence by a domestic animal is an accident, for which the owner is no more responsible, in the absence of ordinary care, than if such animal had broken the stable door or its halter, or should take fright and run away in the road: Goodman *v.* Gay, 3 Harr. 188; Scribner *v.* Kelly, 38 Barb. 14; Shearman and Redfield on Negligence § 188. The effect of the answers to the points was that the defendants were absolutely bound to prevent the escape of the horse to the highway, and that their failure to do so rendered them liable.

The injury was not caused directly by the stallion being on the highway, but by the foolhardy and negligent act of the woman herself in jumping out of the carriage. The maxim, *causa proxima, non causa remota spectatur*, applies.

*E. K. Martin* and *G. C. Kennedy*, for the defendant in error, cited Dolph *v.* Ferris, 7 W. & S. 367; Rossell *v.* Cottom, 7 Casey 526; Shearman and Redfield on Negligence (2d ed. 1870) p. 235, § 194.

Mr. Justice MERCUR delivered the opinion of the court October 4th 1882.

[McIlvaine *v.* Lantz.]

This is a case of negligence. The injury was caused by the negligence of the plaintiffs in error, in permitting a stallion of theirs to escape from the yard in which he had been kept, and to roam on the public highway. The stallion was two years old, and was kept in a barnyard with another colt. The fence inclosing the yard was claimed to be as good as those which generally inclose the barnyards of farmers.

The jury have found that stallions of the age of this one, as a class, have vicious propensities, and are commonly known to have them ; that they are liable and likely to do damage ; that the plaintiffs in error were negligent and careless in keeping their stallion, and did not have sufficient and proper fences around the inclosure in which they had the stallion confined, and from which he escaped, to keep him properly confined ; and that they did not use precautions necessary and proper to keep such animal from escaping, straying, and roving loose on the public highway, and endangering the traveling public; and that his being at large on the public road was the proximate cause of the injury complained of. They further found that the defendant in error was not guilty of any concurrent or contributory negligence on her part. All these facts were found on evidence sufficient to justify the finding. This leaves little for us to consider. The main complaint arises under the third specification. The court was requested to charge : "if the jury believe that at the time the defendants' horse broke out of their barnyard, it was inclosed by such a fence as is common among farmers, and usually considered safe to confine the farm stock, including such a horse as that of the defendants, they were not guilty of negligence, and the plaintiff cannot recover." The court refused to so instruct the jury, but left it to them to find, under the evidence, whether the fence was sufficient and safe for keeping in such animals as the stallion ; if it was, and the stallion did not get out through default of the defendants, the plaintiffs could not recover. In this we see no error. The fact that the fence may have been such as is common among farmers, and usually considered safe, does not take from the jury the right to find, under all the evidence, whether the fence was sufficient. The evidence was conflicting as to the height of the fence, and not clear as to its condition otherwise. The fact was undisputed that the colts jumped over it. The point wholly overlooked the general rule, which the court had declared in the general charge, that negligence "is the want of such care as men of ordinary prudence would use under similar circumstances." The request was not to charge that the fence was sufficient, if such as men of ordinary prudence would deem adequate to secure the detention of such a horse. All questions of reasonable care and ordinary prudence were wholly ignored.

[Hunt's Appeal.]

The injury was committed on the 5th of June. An uncontradicted witness testified that he saw the stallion at large on the public highway, in the latter part of April previous, and a boy drive it into the barnyard. The well-known habits and natural inclination of stallions, require a degree of precaution which the owners did not exercise. It is no answer that other farmers may have been equally negligent. Two men, who were in the employ of the plaintiffs in error, saw the stallion break from the yard, yet it was suffered to remain in the public highway some five hours before the injury was sustained.

It is not necessary to discuss the other specifications in detail. We discover no merit in them.

Judgment affirmed.