# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

---

## Anna M. Troth *v.* Henry W. Wills, Appellant.

*Trespass by domestic animal—Acts incident to primary trespass—Responsibility of owner.*

In cases of damage inflicted by the trespassing of domestic animals the primary trespass is the entry of the animal upon the land; the attendant damage for which the owner may be held liable is a matter of aggravation. Mischievous acts of the animal when incident to the primary trespass, in any of its aspects, or so closely associated with it as to form a substantial part or an immediate result of it, are a legitimate matter of aggravation, for which the owner should be held liable.

*Trespass and incidental injuries—Question for jury.*

If an animal injures a person lawfully trying to prevent it from trespassing, the owner will be held liable, though the injury be one which the animal is not prone to commit.

A cow trespassing upon another's land hooked the plaintiff who was driving it off. The cow was not known to be naturally mischievous; the court left the questions of negligence and damages to the jury, with suitable instructions as to the measure of damages for the injuries inflicted as being aggravating incidents to the trespass.

Argued Oct. 13, 1897. Appeal, No. 100, Oct. T., 1897, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1895, No. 382, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, ORLADY, SMITH and PORTER, JJ. Affirmed. WICKHAM and PORTER, JJ., dissent.

Trespass for personal injuries. Before Brégy, J.

It appears from the evidence that the plaintiff, a lady about fifty-five years of age, was temporarily living with her son, in a small country place, and the cow of the defendant strayed into the garden belonging to the son. The plaintiff, seeing the cow in the garden, came out of her son's house and attempted to drive the cow out of the garden back into the pasture field, from where she entered into the garden. The plaintiff alleges that while so driving the cow out of the garden back into the field, the cow deliberately went towards the field, and that she followed closely behind the cow, when the cow suddenly turned her head and butted the plaintiff in the abdomen, and hence her injuries.

The son of the plaintiff was the tenant of one Shonberger, and in his verbal lease had undertaken the place, with the fences in the condition they were, in order to have cheaper rent. The defendant was also a tenant, of the same owner, of several stalls in his, said owner's barn, which adjoined the plaintiff's son's place, and that during this particular period of the year, the well at the barn ran dry, and the owner permitted the defendant to drive his cow over a field to a small creek therein for water. This field was divided from the garden of plaintiff's son by a fence. The defendant's servant was in the habit, in the mornings, of letting the cow out of the stable, with other cattle, and she would go to the creek for water and gradually return to the stable ; in the mean while the servant would clean up the stable.

On the morning of October 29, 1895, this cow, on its way back from the creek, strayed or broke into the garden as described.

The evidence on behalf of the plaintiff was that the fence between the garden and the field was in good order and repair on that morning. The evidence on behalf of the defendant was that the fence had been in bad condition prior to the accident but did not say how it was on this morning.

The judge, in charging the jury, left it for them to say whether the defendant was negligent in allowing his cow to roam about a pasture field, when the evidence of the plaintiff was that the fences were in good condition.

The court declined defendant's points as follows :

1. There is no evidence in this case to show that defendant's cow was vicious, or the defendant had any knowledge that it was claimed, that she was vicious.

2. [If the jury believe that the cow of the defendant was simply wandering away from its stable, in search of water, over a private field, and during its progress entered upon the premises on which plaintiff was, there is nothing in these facts that justify a verdict against this defendant.] [1]

3. I instruct you that the duty to keep the fences in repair was either upon the owner, Shonberger, or the tenant, Troth, but not upon the defendant.

4. [The evidence being uncontradicted, that the defendant had permission of the owher to allow the cow to roam in his field, that then there was no negligence on the part of the defendant, and the verdict should be for him.] [2]

5. [Under all the evidence the verdict should be for the defendant.] [3]

Verdict and judgment for plaintiff for $400. Defendant appealed.

*Errors assigned* were (1) in declining to charge as requested in defendant's second point, reciting same. (2) In declining to charge the jury as requested in defendant's fourth point, reciting same. (3) In declining to charge the jury as requested in defendant's fifth point, reciting same.

*Chas. F. Linde*, for appellant.—In the present case the defendant did not omit or neglect to perform any duty which a prudent man under the circumstances would have done. He did just what every careful man would or could do: McIlvaine v. Lantz, 100 Pa. 586.

The burden is upon the plaintiff to show a negligence on the part of an owner, even when the animal belongs to a class of known dangerous propensities: Curtis v. Schlosser, 14 C. C. R. 600; Mann v. Weiand, 81* Pa. 243; Linnehan v. Sampson, 126 Mass. 506.

*Julius C. Levi*, for appellee.—The principle of law that seems to govern this case, is that an animal liable to do injury

to man or property is a nuisance, and that keeping it after notice of such liability is so wrongful that the owner is chargeable for any neglect to keep it with such care that it cannot do damage to a person or property who, without any essential of fault, is injured thereby. This principle is clearly approved and confirmed in the case of Mann v. Weiand, 81* Pa. 243.

Mr. Justice MERCUR in delivering the opinion of the court cites a number of authorities to show a single instance of the knowledge of the owner that his animal would injure either persons or property is sufficient to support any claim for damages arising from his negligence to properly restrain such animals or keep them within a safe enclosure.

In support of this principle may be cited the cases of Dolph v. Ferris, 7 W. & S. 367; Gregg v. Gregg, 55 Pa. 227; McIlvaine v. Lantz, 100 Pa. 586; Barber v. Mensch, 157 Pa. 391.

The question of the defendant's knowledge of the vicious habits of the animal was properly left to the jury under the evidence hereinabove quoted, and a verdict rendered thereon should not be set aside.

OPINION BY SMITH, J., July 29, 1898:

It is not necessary, in disposing of this case, to determine the liability of the owner of a domestic animal for all its acts while trespassing upon another's land. In such cases, the primary trespass is the entry of the animal upon the land; the attendant damage for which the owner may be held liable is matter of aggravation. The minimum liability of the owner is for acts arising from the natural propensities of the species, and from special characteristics and acquired habits of the individual of which the owner has notice. When the primary trespass is the wilful act of the owner, he may be held to a larger measure of responsibility; thus, if he take a dog into a field where he is himself a trespasser, and the dog there kills or injures sheep, this, though its first offense, may be laid as an aggravation of the trespass: Beckwith v. Shandike, Burr. 2092; Michael v. Alestree, 2 Lev. 172, cited in Dolph v. Ferris, 7 W. & S. 367. Beyond this, the authorities appear unsettled, and principle and analogy form the only guide. Doubtless there may be mischief so far independent of the primary trespass, and unrelated to the propensity or habit leading to this, that it can-

not properly be deemed matter of aggravation. In my view, however, the mischievous act, when incident to the primary trespass, in any of its aspects, or so closely associated with it as to form a substantive part or an immediate result of it, is a legitimate matter of aggravation, for which the owner should be held liable. In such case, the propensity or habit leading to the primary trespass may be regarded as the proximate cause of the resulting injury. If, for example, trespassing cattle, in order to reach the vegetation in a hot bed, break its glass covering, the owner must be held liable for this injury, though cattle are not by nature prone to break glass. Such breaking is incident to the primary trespass, and grows out of the propensity leading to this. If an animal injure a person lawfully trying to prevent it from trespassing, the owner should be held liable, though the injury be one which the animal is not prone to commit. In such case the mischievous act is closely associated with the primary trespass, and in fact grows directly out of it. The same principle must govern if a person be injured in trying to prevent the continuance of a trespass, or of acts forming an aggravation of it.

As was said in Rossell v. Cottom, 31 Pa. 525 : " The property in the animal raises the duty, on the part of the owner, to guard against its mischievous propensities ; and failing in this, it holds him answerable for its injurious acts, without regard to the degree of care bestowed in controlling it. ' Sic utere tuo ut alienum non lædas ' applies to all such cases. It is not a question of negligence or want of due care on the part of the owner." This principle is more in accord with the requirements of present conditions and needs of the people than the doctrine of non-liability of the owner without notice of the vicious habits of his cattle. It is reasonable to presume that an owner of cattle is better acquainted with their habits than a stranger would be, and if ignorance on this point will relieve an owner from the consequences of their mischievous acts, the burden of showing this should rest with him. By a statute passed two centuries ago domestic animals had a right to roam at will over a stranger's land, if not adequately fenced. Verily, a landowner, under this statute, was keeper of his neighbor's cattle. But this statutory duty has ceased, and now the owner of cattle must restrain them or be held liable for the consequences. There is no sound

6                      TROTH *v.* WILLS.

Opinion of the Court—Dissenting Opinion. [8 Pa. Superior Ct.

reason for visiting upon third persons the injurious results of the acts of trespassing cattle, or for subjecting them to loss thus caused, while exempting the owners.

In this view of the principles which should govern the determination of this case, the injury to the plaintiff must be deemed an aggravation of the trespass committed by the animal in entering the garden. This injury, indeed, is not such as a cow is ordinarily prone to commit; and there is no evidence that the defendant's cow had contracted the habit of making such assaults. But the act of the animal was one to which a creature of that kind is naturally disposed on being disturbed while feeding; and it was so directly associated with the primary trespass that, unless the plaintiff's right to prevent a continuance of this be denied, there can be no ground for questioning the liability of the owner. This right cannot be controverted, for under the circumstances the act of the plaintiff is to be regarded as that of the tenant of the premises. The act of the animal by which the plaintiff was injured, so far from being independent of the primary trespass, or unrelated to it, grew directly out of the propensity in which this originated, coupled with the plaintiff's attempt to prevent its continuance. The defendant's fifth point was therefore properly refused. The case was submitted to the jury with suitable instructions, and their finding on the questions involved was concurred in by the trial court.

The judgment is affirmed.


DISSENTING OPINION BY PORTER, J.:

I cannot agree with the majority of the court and I am therefore constrained to dissent. Our deceased Brother WICKHAM had prepared an opinion which expresses his own views as well as those held by myself, so much more forcibly than I can hope to do, that by the permission of my brethren I file that opinion without attempting to add thereto.


DISSENTING OPINION BY WICKHAM, J.:

The plaintiff's statement of claim alleges in substance, that the defendant kept a "wild, mischievous and ferocious cow" accustomed to stray from his premises and to roam on the public highways and roads, and that he was "aware and cognizant

of the fact that said cow was prone and disposed to attack, butt and injure people;" that on October 29, 1895, he suffered the cow to be at large on the roads and highways, and thence to trespass on the plaintiff's garden and grounds, and that while she, the plaintiff, was lawfully driving the animal from her said premises it attacked and injured her.

At the trial it appeared that the defendant stabled his cow in a barn in a field adjoining the garden mentioned, sometimes permitting it to be out in the field, that it had in some manner pushed down or gone through or over a dilapidated fence separating the two enclosures, and entered the garden to eat the cabbage growing therein; that while the plaintiff was walking beside the cow and driving it out of the garden, the animal suddenly and unexpectedly turned, struck her with its head or horns, knocking her down and somewhat injuring her. It further appeared, that the animal was a small Alderney milch cow, bred by the defendant; that it had always been petted and gentle, and had been handled and cared for by the defendant's son from the time the latter was eleven years old until the day of the injury, a period of three years; that the owner had no notice or intimation of any kind that the cow was vicious or ferocious, or had ever before attacked or menaced any one, and that the garden, which was in a rural neighborhood, belonged, not to the plaintiff, who had no ownership or legal interest therein, but to her son, a man of family, with whom she was staying or visiting.

The effect of the passage of the Act of April 4, 1889, P. L. 27, repealing the fence law of 1700, was to again place us under the reign of the common law so far as trespassing cattle are concerned. Their owners must now fence them in, or be answerable for the legal consequences of their trespasses: Barber v. Mensch, 157 Pa. 390. In the present case, had the owner of the garden brought suit against the appellant, for the injury done by the cow in breaking and entering the enclosure, eating or trampling the growing vegetables, or indeed any other harm that domestic cows, as a class, are prone and accustomed to do, and that this one had caused him, he certainly would have been entitled to recover.

That, however, is not the case before us. We are called on to determine whether the rule, so far as our authority goes, shall

be established in Pennsylvania, that the owner of a useful, gentle, and domestic animal, belonging to a class recognized from the earliest times as harmless to man, watched, driven to and from the pasture fields, fed and milked by women and children the world over, shall be responsible for the conduct of the animal, foreign to its well known nature and habits, if it happen that through any negligence of such owner, or his servant, it is permitted to trespass on the land of another, and there injures a third party.

The authorities on this subject are numerous and impossible to reconcile. Some of them rest on statutes or ordinances, not always adverted to in the text books or digests, in which they are hastily cited. Others are based on the theory, that the right to recover exists because of the trespass to realty, and that any unusual and not to be expected injury caused by the animal to the person of the owner of the land, or his other property, must be alleged and proved by way of aggravation of damages. Another class of cases hold that all injuries committed by an animal, in a place where it has no right to be, must be compensated for by the owner. It is on the latter theory of the law that the plaintiff must recover, if she can sustain her action, as we do not deem it worth while to notice the few erratic and sporadic cases, seemingly decided on no discoverable reason, except an assumed natural equity, that any one injured by anything, animate or inanimate, belonging to another, should be compensated by the owner.

As has already been observed, the plaintiff was not the owner of the land trespassed upon, and it may be remarked that she is aided by no statute. We know of no Pennsylvania decision which rules the case in hand, and we must therefore go to the common law, which as Coke says, " Is like a deep well out of which each man draweth according to the strength of his understanding." Cases like those of Dolph v. Ferris, 7 W. & S. 367, Goodman v. Gay, 15 Pa. 188, and McIlvaine v. Lantz, 100 Pa. 586, are by no means controlling.

In the first case, just mentioned, the defendant's trespassing bull gored and killed the plaintiff's horse. A recovery was permitted on the ground that the killing of the horse was an aggravation of the trespass to the plaintiff's land, and for the further and better reason, that it was a well known propensity

of bulls to attack and gore horses. In the second case it appeared, that the owner of a horse deliberately turned it loose in the streets of "a densely populated place . . . . à part of a great and populous city." The court held that turning loose an animal of this sort, owing to his "nature and disposition to gambol, plunge, kick up his heels, the heedlessness of children, the occupation and busy pursuits of men and women" and the confined spaces of the streets, was and must be necessarily dangerous to persons, and that neither his owner, nor any one else, could be ignorant of this fact. It will be noticed, however, from what is said in the opinion, that the decision was intended to be restricted to the facts of that particular case. In McIlvaine v. Lantz, the injury complained of was caused by a young stallion negligently permitted to roam on the highway. The reason for sustaining a recovery is stated in the following quotation from the opinion: "The jury have found that stallions of the age of this one, as a class, have vicious propensities, and are commonly known to have them; that they are liable and likely to do damage."

It is plain that the principles on which the above cases and others of the same kind, to which our attention has been called, were decided, have no direct bearing here, and that a different rule should be applicable to bulls, stallions, rams, buck deer, and such animals, having inherent vicious, erotic, or dangerous qualities, because of their sex, from that which should be applied to ordinary milch cows. The rule of the common law is well stated in Dolph v. Ferris, supra, as follows: "On account of the natural and notorious propensity of horses, cows, and sheep to rove, the owner is bound, at all hazards, to confine them on his own land, and if they escape and do any mischief on the land of another, which they are naturally inclined to commit, the owner is liable to an action of trespass, although he had no notice in fact of such propensity." The qualifying force of the words "which they are naturally inclined to commit" must not be lost sight of, although it evidently has been in some of the cases, decided in other jurisdictions.

"The owner of creatures which as a species are harmless and domesticated, and are kept for convenience or use, such as dogs, cattle, and even bees, is not liable for injuries wilfully committed by them, unless he is proved to have had notice of the in-

clination of the particular animals complained of to commit such
injuries." Shearman & Redfield on Neg., section 629. "There
are other mischiefs which may be committed by domestic ani-
mals that one is under no obligation to anticipate and guard
against, because they are not the result of a general propensity,
but are committed, if at all, by exceptionally vicious individuals
of the particular species of animals. Thus, though every horse
will roam into neighboring fields, if not restrained from doing
so, it is only in rare and exceptional cases that a horse will at-
tack and injure those who come near him. Therefore, while
the owner should anticipate and protect against trespass on
lands by his horses, he is under no moral obligation to anticipate
that a horse, in which no such disposition has been discovered,
will suddenly make an assault upon and kick and bite some
passer by, who chances to come within his reach. For this rea-
son, the keeper of a domestic animal is not in general respon-
sible for any mischief that may be done by such animal, which
was of a kind not to be expected of him, and which would not
be negligence in the keeper to fail to guard against:" Cooley
on Torts, 403. In Whar. on Neg., section 923, the author says
that "the owner of animals of all classes, tame or wild, is as-
sumed to be cognizant of their generic noxious tendencies, but
that the owner of domestic animals is not liable for such dam-
ages perpetrated by them, as are not in accordance with their
nature, unless he knows or ought to know their tendency to
such noxiousness."

In Klenberg v. Russell, 125 Ind. 531, decided in 1890, will
be found a good exposition of the common law liability of the
owner of a trespassing domestic animal. There, as here, the
offending animal was a cow, and the injury was to a human
being. The court says: "But it does not necessarily follow,
that the owner of domestic animals, suffered to run at large,
or to trespass on the lands of others, are thereby rendered
responsible for all injurious acts committed by such animals,
while away from the premises of the owner." It was held,
consistently with the rule of the common law and right rea-
son, that the liability is only for the natural consequences that
may be anticipated because of the well known disposition and
habits of the class to which the straying animal belongs, unless
it is possessed of a vicious disposition, whereof the owner has

knowledge. " If the injury is committed while trespassing on the lands of others, the owner is chargeable and is responsible for the damage which directly results therefrom as the natural and probable consequence : " Lyons v. Merrick, 105 Mass. 71. In Losee v. Buchanan, 51 N. Y. 476, the court, speaking on this subject, say : " The owner is not responsible for such injuries, as they are not accustomed to do, by the exercise of vicious propensities, which they do not usually have, unless it can be shown that he has knowledge of the vicious habit and propensity." It appeared in the English case of Cox v. Burbridge, 13 C. B. N. S. 430, that a horse was negligently allowed to roam on a highway where it kicked a child. It was decided that the owner was not liable, as it was not shown that the animal was vicious and wont to kick, and that the owner knew it had such a disposition. The owner had no reason to expect that his horse would attack a human being, although he was bound to anticipate that it might, as an ordinary sequence, trespass on fields and injure growing crops. It is only fair to say, however, that in some of the text books, from which we quote, will be found generalizations inconsistent with the rule of the common law.

The principle, on which we adjudge the case at bar, is embraced in the maxim, " Non remota causa sed proxima spectatur : " 1 Addison on Torts, 40. The general rule is as AGNEW, J., says in McGrew v. Stone, 53 Pa. 436 : " That a man is answerable for the consequences which are natural and probable and might, therefore, be foreseen by ordinary forecast." Chief Justice THOMPSON expands the same thought in the following words, in Pennsylvania Railroad Company v. Kerr, 62 Pa. 353 : " It is certain that in almost every considerable disaster, the result of human agency and dereliction of duty, a train of consequences generally ensue and so ramify, as to affect more or less the whole community.. Indemnity cannot reach all these results, although parties suffer who are innocent of blame. This is one of the vicissitudes of organized society . . . . there must be a limit somewhere. Greenleaf in vol. 2, § 256, touches the question thus : ' The damages to be recovered must be the natural and proximate consequence of the act complained of.' This is undoubtedly the rule. . . . With every desire to compensate for loss, when the loser is not to blame, we know it cannot always

be done without transcending the boundaries of reason and, of course, of law."

We are sometimes too apt to think, that any one who sustains injury, in person or in property, necessarily has a natural and legal right to insist, that he shall be salved with the money of somebody else.

In Pennsylvania, as in most of our sister states, so far as the dog is concerned, except where the rule has been changed by statute, the common law doctrine, which absolves its owner from the consequences of its mischief, committed at home or abroad, unless such owner had previous knowledge of the animal's abnormal viciousness, is still followed. After the decision of the Scotch appeal of Fleming v. Orr, 2 Macq. 14, which applied to Scotland the rather far-fetched theory that a domestic dog is not naturally inclined to harass sheep or cattle, Lord Cockburn, commenting on the case, remarked, that "Every dog became entitled to at least one worry." Another English judge has said, "The law allows a dog his first bite:" 17 Alb. J. 196. It is hard to give any good reason why the owner of the more useful, innocent, and timid milch cow should not receive the benefit of an analogous rule. When we consider the fact that, in Pennsylvania, there are over one million seven hundred thousand neat cattle, and that the proportion of milch cows exceeds nine hundred and twenty-seven thousand, it will be seen that the question we are considering is of no little importance.

It is argued that the appellant's cow was vicious. There is no evidence even suggesting such a tendency, and the learned trial judge so instructed the jury. Conceding that the animal was breachy, as alleged by the plaintiff, this indicted no ferocity or proneness to attack people. Any one, acquainted with the nature and habits of horses and cows, knows that usually the most intelligent and gentle animals of these species, are the most cunning and successful in finding their way into forbidden inclosures and the readiest to run away, when discovered. As was said in Keshan v. Gates, 2 Thomp. & C. (N. Y. Sup. Ct.) 288: "The vicious habits or propensities which the owner of an animal must, when known to him, guard against, are such as are directly dangerous, such as kicking and biting in horses, and hooking in horned animals, and biting in dogs. These habits or propensities may be indulged in at any moment and are inevitably dangerous."

The adoption of the rule, sanctioned by the decisions of many respectable tribunals in other states, that the owner of every trespassing domestic animal, is liable merely because it is a trespasser, for all injuries it may commit, however contrary to its usual nature and disposition, and regardless of his knowledge of its special viciousness, might often lead to strange and unthought of consequences. For instance, suppose that a pet lamb, always regarded as a harmless playmate of children, is permitted to wander from its owner's premises into those of a neighbor (this as well as the next illustration is not a supposititious case), and there, in play or anger, butts a child from a high veranda, or a trespassing hatching hen, discovered on its nest by the little son of the owner of the premises, pecks out the eye of the boy as he is lawfully trying to drive it away, the unfortunate owner would be liable in each instance for all the resulting damages. In vain would he urge, that the animal causing the injury belonged to a class ordinarily docile in its nature and harmless to man; that he had no reason to anticipate that it would do such unusual mischief; and that he was only responsible for the things hens, lambs and milch cows usually do and may be expected to do when trespassing, that is, for the natural and probable consequences of their trespasses. The answer, under the rule we are considering, would be: "You were guilty of negligence in permitting your animal to trespass, and therefore you are liable for all its freaks, for the consequences of the wrong, near and remote, probable and improbable, for the things you had reason to anticipate, and those which no one would be likely to think could happen, save as a remote possibility." The results that might follow the application of such a rule demand its rejection, where it has not already been fully adopted.

The only negligence of the defendant revealed by the evidence was his failure to keep his cow out of the garden of the plaintiff's son. To the latter, the defendant would certainly be liable for the harm done to the realty, but as he had no notice or knowledge of any vicious or ferocious propensity on the part of the animal, we do not think that he should be mulcted in damages for the unfortunate injury suffered by the plaintiff, nor, for that matter, even to the owner of the land, had such owner been injured in like manner. The appellant's fifth point,

asking the court to direct a verdict in his favor should have been affirmed.

It is perhaps unnecessary to say, that this decision in no way conflicts with anything decided or indicated in the leading case of Railroad Co. v. Skinner, 19 Pa. 298, wherein GIBSON, J., says that the owner of a cow, trespassing on a railway track, is answerable for harm caused thereby to trains and passengers. This is only a proper extension and application of the common-law rule to new conditions. The mere presence of the animal on the railway, to quote from the opinion, "has a direct tendency to throw a train off the track and endanger life and member." In other words, these results are natural, and probable consequences of the trespass and therefore to be anticipated. So also, the owner of an animal which has a contagious disease, who permits it to trespass, must be held to contemplate that likely the disease will thus be communicated to other animals.