## McGurn *v.* Grubnau, Appellant (No. 1).

*Negligence—Animals—Vicious dog—Ownership of Premises.*

A person who continues to maintain, or permit to be maintained, upon his premises, an animal, such as a dog, after notice that the dog has become vicious and dangerous to his neighbors, is liable in damages for injuries sustained by a bite of the dog.

Where a person keeps several dogs of the same strain of blood and family, and strongly resembling each other in size, color and general appearance, such person cannot relieve himself from liability for injuries caused by the bite of one of the dogs, because the person injured cannot identify the particular dog that attacked him, and cannot prove that previous attacks upon other people, of which the defendant had notice, were made by the same dog that assaulted him.

In an action to recover damages for injuries sustained by the bite of a vicious dog, the defendant cannot relieve himself from liability by evidence to the effect that long before the injury to the plaintiff, he had presented the dog to his sister-in-law, who lived with him, and that at the time of the injury the title to the premises in which the defendant lives was in his wife.

Argued Dec. 4, 1907. Appeal, No. 102, Oct. T., 1907, by defendant, from judgment of C. P. Montgomery Co., Oct. T., 1905, No. 148, on verdict for plaintiff in case of James McGurn, as the next friend of Thomas Champion, v. Carl Grubnau. Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for injuries caused by the bite of a dog. Before WEAND, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Amongst the persons bitten was a Miss Ball, whose father, when he saw that she had been bitten, or was told of the fact, called upon Mr. Grubnau and told him of this fact. Mr. Grubnau then asked him what should be done with the dog, and the answer was, "Either shoot him or erect a fence to keep him in." That testimony is not disputed, therefore you have direct

knowledge brought to the attention of the defendant by the father of one of the injured persons that this dog had bitten his child. Therefore, if you believe that testimony, and it is not disputed, notice was given to the defendant.] [1]

[Now, in this case it has also been shown to you that, aside from this direct notice to Mr. Grubnau, that upon at least three occasions when the dog bit the different persons who were lawfully upon the premises, that the persons in charge of the house or in the service of the family, saw the occurrence and drove the dog away. Now, it is for you to say, under all this evidence, as to whether Mr. Grubnau did not have notice of the bad habits of this dog.] [2]

[Now, the defense in this case claim that this dog was not owned by Mr. Grubnau, but owned by his sister-in-law. That defense will not avail if the jury shall find that the dog was kept on the property occupied by the defendant in this case with his knowledge and consent.] [3]

[We all know the affection which people have for dogs. But when we have animals of the kind that are given to biting people there is but one thing for us to do, either to part with the dog or else to suffer the consequences of the dog's misconduct, and that is precisely this case.] [4]

Verdict and judgment for plaintiff for $350. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them, and (5) in refusing binding instructions for defendant.

*H. B. Patton*, of *Staake & Patton*, with him *Frederic L. Clark*, for appellant.—If a man owns neither the dog nor the premises on which the dog is kept, there is no rule of law, or justice, or common sense, by which he can be held responsible for what the dog does: Snyder v. Patterson, 161 Pa. 98; Fitzgerald v. Brophy, 1 Pa. C. C. Rep. 142.

*N. H. Larzelere*, with whom *M. M. Gibson*, for appellee, cited: Snyder v. Patterson, 161 Pa. 98; Larkin v. McMullin, 49 Pa. 29; Darlington's App., 86 Pa. 512.

OPINION BY HEAD, J., December 7, 1908:

The plaintiff's action was to recover damages for injuries sustained from the bite of a dog. There was ample evidence that the plaintiff, a young boy, having been called to the grounds of the defendant by the brother-in-law of the latter, to attend a party playing bowls, was attacked and severely bitten by a dog kept on the premises. As a result of his injuries he was confined to the house under the care of a physician for a number of weeks. That he suffered physical pain from his wounds and mental distress from the shock and fright incident to such an attack cannot be doubted. Indeed, it is not alleged that the damages awarded were, in any degree, excessive.

That the dog was in fact a vicious animal the testimony abundantly establishes. During a period of some months prior to the injury to the plaintiff it had indiscriminately attacked quite a number of persons, adults and children, some while calling at the house of the defendant on business, others while passing along the public highway. Some of these attacks were made under the eye of the wife or servants of the defendant. He had bred this dog and owned and kept on the premises its sire and dam, one of which he had himself imported from Europe. Under such circumstances it does not seem a rule of law could be deemed unreasonable or harsh that would permit a jury to infer some knowledge by the defendant of the disposition of the dog so plainly manifested during a considerable period of time. But the plaintiff was not compelled to rely on such inference. Some time before the plaintiff was injured the dog had attacked on the public highway and bitten the daughter of James W. Ball, who was a witness. He had not seen the attack, but it was seen by another witness who beat the dog off. Mr. Ball, having heard of the assault, went to the defendant, when, according to his testimony, the following transpired: "Q. Tell us what you told him about your daughter being bitten? A. I told Mr. Grubnau that my daughter had been bitten with one of his dogs, and, of course, he said he was sorry to hear it. We had quite a little argument about it, and Mr. Grubnau wanted to pay the damages, but I

told him I did not want any of his money, but that all I asked him to do was to keep the dogs inside. He said he was perfectly willing to do anything within his power to do so, he wanted to do what he could. I told him to go shoot the dogs, or put up a fence high enough to keep them inside. Q. What did he say to that? A. He said, 'You might as well shoot the man as shoot the dogs.' Q. Did he put up a fence afterwards? A. Yes, he did, within a very few weeks.'' The defendant made no denial of this. This testimony, in connection with all of the other circumstances, in our opinion furnishes sufficient basis for the conclusion reached by the jury.

The first assignment complains of the fact that when the learned trial court, in his charge to the jury, referred to this testimony, he misstated or misquoted it. The court said: "Mr. Grubnau then asked him [Ball] what should be done with the dog, and the answer was, 'Either shoot him or erect a fence to keep him in,' etc.'' This, and the language immediately following, would indicate that, in the mind of the court, the conversation between the witness and the defendant referred to the particular dog which had bitten Miss Ball; whereas in fact the witness did not know which one of the three dogs had made the attack, and spoke of them collectively. Of course, this was an inadvertence on the part of the trial judge. If noticed by counsel at the time and deemed material, it was their plain duty to direct the attention of the judge to the error and give him an opportunity to correct it. If it escaped the notice of counsel it is not unreasonable to suppose it also passed unnoticed by the jury. But was it a material misstatement?

There were maintained, on the premises of the defendant, three dogs, not only of the same strain of blood but of the same family. Naturally there would be, in size, color and general appearance, a strong resemblance between them. If repeated attacks had been made on different persons by one or more of these dogs and this fact had been brought to the knowledge of the defendant, could he escape liability in an action like the present one, because the plaintiff (a) could not identify the particular dog that attacked him; and (b) could

not prove that previous attacks upon other people, of which defendant had notice, were made by the same dog that assaulted him? If so, the immunity of a defendant would grow as he multiplied the number of vicious animals he kept. The mere statement of such a proposition ought to be a sufficient refutation of its soundness.

The responsibility of a defendant in such a case rests upon the fact that he continues to maintain, or permits to be maintained, upon his premises, an animal, after notice that such animal has become vicious and dangerous to his neighbors. With the advent of such knowledge comes the legal obligation to so restrain the animal that it does no mischief, or failing that, to assume liability for any injury it may do. If, therefore, the trial court had quoted, with literal accuracy, the testimony of the witness Ball, every element necessary to establish the legal liability of the defendant would have appeared, and, the evidence being uncontradicted, there is no visible reason for assuming that the verdict could have been affected, to the injury of the defendant, by the inadvertent error of the court. The first assignment is dismissed.

It is further contended that the defendant is not liable because he did not personally own the dog, having, long before the injury to the plaintiff, presented it to his sister-in-law, who lived with him. That this position is untenable, under the circumstances of this case, is squarely ruled in Snyder v. Patterson, 161 Pa. 98. An application, to the facts before us, of the legal principle there enunciated, disposes of the appellant's remaining contention, that he could not be held responsible because the title to the premises, in which he lived and on which the dog was maintained, was in his wife and not in himself. He was, nevertheless, the lawful occupant of the premises, the legally recognized head and master of his own household, and, as such, was responsible for the maintenance, not only of his wife, his servants and all who composed his family, but as well of the domestic animals kept there by his direction or with his knowledge and consent.

Judgment affirmed.