# Ramsey *v.* Martin, Appellant.

*Negligence—Animals—Mischievous horse—Proximate and remote cause—Question for jury.*

Where a person frequently turns his horse at large to graze along the streets of a populous town, with knowledge that the animal repeatedly trespassed on private property by entering on lawns and lots to get at the herbage and pasture, and the wife of an owner of a field into which

the horse trespasses is injured while assisting in putting the horse out of the field, by having her arms caught, by the movement of the horse, in a chain which she was removing, in a prudent manner, from a gap in the fence, the question as to her right to recover damages from the owner of the horse is one for the jury.

Argued Dec. 8, 1910. Appeals, Nos. 187 and 188, Oct. Term, 1910, by defendant, from judgment of C. P. Montgomery Co., Oct. T., 1909, No. 38, on verdict for plaintiffs in case of David Ramsey and Elizabeth Ramsey, his wife, v. Alexander Martin, Sr. Before RICE, P. J., MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before SWARTZ, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for David Ramsey for $800 and for Elizabeth Ramsey for $800. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Montgomery Evans*, with him *John M. Dettra*, and *Wm. F. Meyers*, for appellant.—The negligence of defendant was not the proximate cause of injury to plaintiff: Penna. R. R. Co. v. Hope, 80 Pa. 373; Hoag v. Railroad Co., 85 Pa. 293; West Mahanoy Twp. v. Watson, 112 Pa. 574; Reimard v. Railroad Co., 228 Pa. 384; Brace v. Kirby, 43 Pa. Superior Ct. 389; Congress & Empire Spring Co. v. Edgar, 99 U. S. 645; Dolph v. Ferris, 7 W. & S. 367; Goodman v. Gay, 15 Pa. 188; Rossell v. Cottom, 31 Pa. 525 McIlvaine v. Lantz, 100 Pa. 586; Mann v. Weiand, 81* Pa. 243; McConnell v. Lloyd, 9 Pa. Superior Ct. 25; Quigley v. Adams Express Co., 27 Pa. Superior Ct. 116; Miller v. Refining Co., 210 Pa. 628; Gudfelder v. Ry. Co., 207 Pa. 629; Chittick v. Phila. Rapid Transit Co., 224 Pa. 13; McCabe v. Philadelphia, 217 Pa. 140.

The injury to plaintiff was due to her contributory negligence and, therefore, she cannot recover: Scowden v.

R. R. Co., 26 Pa. Superior Ct. 15; Weir v. Electric Light Co., 221 Pa. 611; Potter v. R. R. Co., 221 Pa. 550; Best v. Williamsport Staple Co., 218 Pa. 202.

*Muscoe M. Gibson,* with him *Louis M. Childs,* for appellees.—It is the duty of an owner of a domestic animal to guard against its known or mischievous propensities: Rossell v. Cottom, 31 Pa. 525; Bunting v. Hogsett, 139 Pa. 363; Gudfelder v. Ry. Co., 207 Pa. 629; Troth v. Wills, 8 Pa. Superior Ct. 1.

The case was for the jury: Tilburg v. Ry. Co., 217 Pa. 618; Cohn v. May, 210 Pa. 615; Pittsburg v. Grier, 22 Pa. 54; Vallo v. Express Co., 147 Pa. 404; Rauch v. Lloyd, 31 Pa. 358; Thomas v. R. R. Co., 194 Pa. 511; Pennsylvania R. R. Co. v. Barnett, 59 Pa. 259; Brown v. Gilmore, 92 Pa. 40; Penna. R. R. Co. v. Hammill, 24 L. R. A. 531; Lockwood v. Ry. Co., 200 Mass. 537 (22 L. R. A. N. S. 488); Hess v. Coal Mining Co., 178 Pa. 239; Koelsch v. Philadelphia Co., 152 Pa. 355; Heh v. Consolidated Gas Co., 201 Pa. 443; Geiser v. Rys. Co., 223 Pa. 170; Bardsley v. Gill, 218 Pa. 56; Hey v. Philadelphia, 81 Pa. 44.

OPINION BY ORLADY, J., March 3, 1911:

The defendant frequently turned his horse at large to graze along the streets of a populous town, with knowledge that the animal repeatedly trespassed on private property by entering on lawns and lots to get at the herbage and pasture.

On July 3, 1908, the horse was turned loose without halter or attendant, and while so at large forced his way through a wire fence into an outlot of the plaintiff, in which the plaintiff's horse was then grazing. Mrs. Ramsey called a friend to remove the animal, but his efforts were ineffectual, owing to the friskiness of the horse. A half hour later another friend, Mr. Frankenfield, was called to remove him for fear that the trespassing horse would injure the plaintiff's horse.

This pasture lot was inclosed with a fence, except at a

ten feet opening, in an alleyway for entrance and exit, and this was protected by a chain that was made fast to a post at one side and which hooked around a post at the other side, hanging about three feet above the ground at its center.

Frankenfield caught the horse by the forelock and nose, and started to lead it from the lot through the alleyway, when Mrs. Ramsey, in order to aid him in getting the horse from the lot, went to the post to detach the loose end of the chain. When Frankenfield, with the horse, was about nine feet from the chain, it suddenly reared up and broke away from him, rushed toward the opening and against the chain which had not been loosened. Mrs. Ramsey's hand was caught between the chain and post, and before she could release it, the horse swerved and again ran against the chain, and a second time caught her hand against the post. The injuries to her hand and body were so serious and permanent as to cause a general breakdown of her health.

The defendant did not offer any testimony, and requested the court to instruct the jury that under all the evidence, the verdict must be in his favor, which was refused, and a verdict for $800 was returned in favor of each plaintiff.

While the important facts are not in dispute, contrary deductions might readily be drawn from them. When the owner knowingly allowed his horse to stray on the streets, and, as shown by the testimony, on account of its predatory habits, to become a nuisance and an obstruction to public travel, he must be presumed to have at least permitted, if not intended, that it should be so, and also that parties affected by the acts of the horse would rightly attempt to drive him away, as they had a clear right to protect their property from his invasion, and in doing so to use reasonable and necessary means. Mrs. Ramsey acted within her rights in seeking to remove the trespassing horse from the pasture lot where he was annoying her husband's horse. Frankenfield made use of

the ordinary and accepted means of leading the horse from the lot, and these means were efficacious until the horse suddenly broke away from him. The horse could not be removed without letting down the chain, and Mrs. Ramsey adopted the same method her family used in doing the same thing. Her position at the post and the way in which she loosed the chain were fully explained, and there was nothing to indicate that she was not careful and prudent in lowering it. The horse came quietly toward the outlet, under the apparent control of Frankenfield, and whether her manner of opening the chain was the reasonable and proper one was clearly for the jury. Since the Act of April 4, 1889, P. L. 27, an owner of cattle must fence them in, or he is answerable in damages for their trespasses: Barber v. Mensch, 157 Pa. 390. This horse was wrongfully at large and the owner must have known that some injury might result to others.

The property in the animal raised the duty on the part of the owner to guard against its mischievous propensities, and failing in this he is responsible for its injurious acts, without regard to the degree of care bestowed in controlling it: Rossell v. Cottom, 31 Pa. 525.

In Dolph v. Ferris, 7 W. & S. 367, it is held that on account of the natural and notorious propensity of horses, cows and sheep to rove, the owner is bound, at all hazards, to confine them on his own land; and if they escape and do any mischief on the land of another, which they are natually inclined to commit, the owner is liable in trespass though he had no notice in fact of such propensity, and the owner of a bull that broke into a neighbor's inclosure, and then gored a horse to death, was held to be liable to the extent of the value of the horse. And in Goodman v. Gay, 15 Pa. 188, an owner who voluntarily turned out a horse in the streets of a populous city was held responsible for injuries done by the horse in kicking a boy, "without its being proved or averred that the owner knew the horse was vicious, and had a habit of kicking men or boys or women," the court saying "The owner has

no right, either by law or custom to turn a horse loose in the streets of a city, as all men know that a horse which has been stabled and well fed, will when turned out, run and plunge, and become dangerous in the midst of people:" McIlvaine v. Lantz, 100 Pa. 586; Cohn v. May, 210 Pa. 615. And in Troth v. Wills, 8 Pa. Superior Ct. 1, we held the owner of a cow liable for injuries caused by striking the plaintiff while she was driving the trespassing cow out of a pasture, saying, "If an animal injure a person lawfully trying to prevent it from trespassing, the owner should be held liable, though the injury be one which the animal is not prone to commit. In such case the mischievous act is closely associated with the primary trespass, and in fact grows directly out of it. The same principle must govern if a person be injured in trying to prevent the continuance of a trespass, or of acts forming an aggravation of it." And, as pertinently applying to the facts of this case, "the act of the animal by which the plaintiff was injured, so far from being independent of the primary trespass, or unrelated to it, grew directly out of the propensity in which this originated, coupled with the plaintiff's attempt to prevent its continuance." See also Erdman v. Gottshall, 9 Pa. Superior Ct. 295; McGurn v. Grubnau, 37 Pa. Superior Ct. 454; Pool v. Van, 38 Pa. Superior Ct. 402.

It was held by this court in Welliver v. Electric Light, etc. Co., 38 Pa. Superior Ct. 26: "The rule as stated in Hoag v. Railroad Co., 85 Pa. 293, which has been more frequently adopted in the Pennsylvania decisions than any other, 'was the injury the natural and probable consequence of the negligence—such a consequence as under the circumstances might and ought to have been foreseen by the wrongdoer as likely to flow from his acts?'" A wrongdoer is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes, if such intervening causes were set in motion by the original wrongdoer: Penna. R. R. Co.

v. Hammill, 24 L. R. A. 531; Curtin v. Somerset, 140 Pa.: 70.

It is true that a defendant is not liable where no injurious consequences could reasonably have been contemplated as a result of his omission of duty, but it is just as clear that he is, and should be liable where the injuries might have been anticipated or foreseen, and it is not necessary that he should have contemplated, or even been able to anticipate the particular consequences which ensued, or that the precise injuries would be sustained by the plaintiff. It is sufficient if, by the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected. True it is, that no one can accurately anticipate the antics of a loose horse, but all men who own, or know anything of the habits of horses do know, that when at large they are prone to do some foolish or mischievous thing to the annoyance or damage of persons or property, and what this horse did was not outside the usual experience of men, or of such an extraordinary character that it could not have been anticipated as a probable result of the plaintiff's negligent act. The fault of no other person intervened in this case. The acts of Frankenfield and Mrs. Ramsey in removing the trespassing horse from the pasture were characteristic of ordinarily prudent persons, or, even if that is a debatable proposition, then it was for the jury to dispose of it under the facts of the case. Yodero v. Amwell Twp., 172 Pa. 447.

The court could not be asked to decide as a matter of law, what is the proper manner of leading a loose horse from a pasture lot, or how a guard chain should be loosened from its fastenings.

From the moment the horse broke into the pasture lot until Mrs. Ramsey was injured at the gateway, every act of the horse was one naturally to be expected of such an animal. Frankenfield could not hold the horse and loosen the chain, so that the assistance of another was necessary

in order to remove him. If the horse had raced about the field and run down, or kicked Mrs. Ramsey while he was at large in the lot, or had there been a gate instead of a chain, and the horse had injured her while she was opening it for his exit, there would not be any question of the owner's liability. Taking out of the case the mischievous act of the horse, no injury would have been sustained, with it in the case; the injury to Mrs. Ramsey was caused solely by the vicious or pernicious act of the horse in breaking away and rushing against the chain, and this was not induced by the negligent or improper act of anyone as an intervening cause as found by the jury. This act was one which the defendant was bound to have anticipated, as one naturally, reasonably, and probably to follow his negligent turning the horse loose on the public streets.

The judgment is affirmed.

For the reasons above given a similar order is made in No. 188, October Term, 1910, the two appeals having been taken by the defendant against the separate plaintiff in the judgment.