## Hilton, Appellant, v. Overly.

*Animals—Boar hogs—Propensities—Injuries—Charge of court.*
In an action to recover damages for the death of a boar hog which was killed by another boar hog which belonged to the defendant, it is reversible error for the court to charge that in order to hold the defendant the jury must find that the animal was vicious and the owner knew it. In such a case the question to be submitted to the jury is, whether the owner, if he allowed such an animal to be at large was not chargeable with the knowledge that

naturally if he were to meet another boar, he would be liable to inflict injury.

Where it is admitted that the defendant was the owner of the boar on the day preceding the trespass, and the defendant testifies that on that day he had loaned the boar to one man and sold it to another, it is for the jury to determine the question of defendant's ownership and possession of the boar at the time of the killing.

Argued Nov. 12, 1917.   Appeal, No. 80, Oct. T., 1917, by plaintiff, from judgment of C. P. Lancaster Co., Feb. T., 1914, No. 40, on verdict for defendant in case of William Roy Hilton v. Howard Overly.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Reversed.

Trespass to recover damages for the death of a boar hog.

LANDIS, P. J., charged as follows:

Many of the facts which have been presented to you are not in dispute, and some do not appear to have been contradicted.   The plaintiff had a boar hog.   On the evening of November 6, 1913, that hog was in his barnyard, and, while there, a boar hog, which at least had been owned by the defendant up to or shortly before that time, in some way got into the barnyard, and, in a fight, killed plaintiff's hog.   There is no dispute about that. That is conceded by everybody.

[It is true that, if the owner of any animal, having it in his possession, which is vicious, allows such animal to run at large, then the owner is liable for any damage which may ensue; but, before you can render a verdict in such a case as this and in this character of an action (this having been brought before a justice of the peace and an appeal having been taken and brought here), you must find, first, that the hog was vicious and the owner knew it; second, that at the time the damage was occasioned, the hog was in the control and ownership and possession of the defendant; third, that the defendant permitted the hog to run at large.   If the hog was

not vicious, or if he on this day was in the possession of Hugh Brown, or if, before the plaintiff's hog was killed, the defendant sold the boar hog to Lawrence Shoemaker, merely subject to delivery, then the plaintiff cannot recover in this case.]　(1)

[Now, what are the facts as to viciousness? The plaintiff says that the defendant's hog came to his place about seven times in all, and that, on one occasion at least, he telephoned to Overly and told him that his hog was there, and that that hog and his hog might get together. He does not give any testimony showing that the defendant's hog was vicious before the killing occurred; that is, there is no evidence that I remember (and you will) that this hog did anything to anybody or to anybody's property before that time. In order that he may recover, the jury must conclude not only that the hog was vicious, but, as I have said, that the defendant knew it.]　(2)

On the part of the defendant, the defendant himself, Lawrence Shoemaker and Hugh Brown all testify that the boar hog was not vicious; that they had seen no signs of it when they were about him. If my memory serves me right, the defendant said that he bought the hog some time in May, 1912, and he had him up to the time or about the time this occurred, and that, during all that time, he saw no signs of viciousness. From all the evidence presented to you, both on the part of the plaintiff and defendant, you must determine that question.

[Now, was the boar hog in the possession of the defendant at the time the killing took place? The defendant testified that, at the request of Hugh Brown, who lived about three miles from his home, he loaned the boar hog to Brown, and that, on the morning of November 5, 1913, Brown came and got the boar hog and drove it to his (Brown's) place. Brown says that he did this, and that he placed the boar hog in his orchard with his pigs; that in the evening of November 6th, be-

348, (1918).] Charge of Court below—Arguments.

tween six and six-thirty o'clock, he saw the boar hog in the orchard, and after that the hog disappeared; that, when he heard the hog was at Hilton's, he first sent his boy after him, and afterwards went himself and drove the hog back to the defendant's place. From this evidence, for it is not contradicted, you will determine whether or not the hog was, at the time of this occurrence, in the possession and under the control of Brown; for, if he was, then, as we have already told you, under the law, the verdict must be in favor of the defendant in this action.] (3)

[Again, did the defendant at this time own the hog? You have heard the testimony of Overly and Shoemaker on this point. Their evidence is not contradicted as to what took place. They say that, on the morning of the fifth of November, they met at Shoemaker's,—I think Shoemaker's warehouse—at least they met; that they dealt together for this boar hog; that Shoemaker offered to give $4.00 and a young hog that he had, and they came together and made the bargain, and that Overly was to deliver this boar hog to Shoemaker and get the $4.00 and also the young hog, and he did so on the Saturday morning after this occurrence. The killing of the plaintiff's hog took place on Thursday, November sixth. If the sale was consummated between Overly and Shoemaker, then the hog, when it killed Hilton's boar, belonged to Shoemaker and not to Overly, and if any one is liable, it is Shoemaker and not Overly, and the verdict under such circumstances should be for the defendant.] (4)

Verdict for defendant. Plaintiff appealed.

*Errors assigned* were (1-4) portions of charge as above quoting them.

*B. F. Davis,* for appellant.—The property in the animal raised the duty on the part of the owner to guard against its mischievous propensities, and failing in this

he is responsible for its injurious acts, without regard to the degree of care bestowed in controlling it: Rossell v. Cotton, 31 Pa. 525; Dolph v. Ferris, 7 W. and S. 367.

Where the animal causing the injury is a trespasser, the owner will be liable, although he had no previous knowledge of the viciousness of the animal: McIlvain v. Lantz, 100 Pa. 586; Stewart v. Brenninger, 138 Pa. 437; Mitchell v. Wolf, 46 Pa. 147.

*John A. Coyle,* with him *William H. Keller,* for appellee, cited: Rossell v. Cotton, 31 Pa. 525.

OPINION BY TREXLER, March 8, 1918:

The plaintiff and the defendant each owned a boar pig. One evening the defendant's boar broke into plaintiff's barnyard and killed his boar. Suit is brought for its value. Three propositions were submitted by the court to the jury in the following language: (1) Was the animal vicious and did the owner know it? (2) Was the animal at the time of the injury in the control, ownership and possession of the defendant? (3) Did the owner permit the animal to run at large? All of these were questions of fact for the jury and under the instructions of the court any one of these propositions answered in the negative would necessarily result in a verdict for the defendant. As to the first proposition, we think the court was in error in stating that under the circumstances in this case, to hold the defendant the jury must find that the animal was vicious and the owner knew it. "On account of the natural and notorious propensities of horses, cows, and sheep to rove, the owner is bound, at all hazards, to confine them on his own land, and if they escape and do any mischief on the land of another, which they are naturally inclined to commit, the owner is liable to an action of trespass, although he had no notice in fact of such propensity": Dolph v. Ferris, 7 W. & S. 367. In Troth v. Wills, 8 Pa. Superior Ct. 1, this court held, following a number of

cases, that the owner of a trespassing animal is liable for such damages as naturally follow. We quote from the opinion, "The primary trespass is the entry of the animal upon the land; the attendant damage for which the owner may be held liable is matter of aggravation. The minimum liability of the owner is for acts arising from the natural propensities of the species, and from special characteristics and acquired habits of the individual of which the owner has notice." In that case a cow trespassed upon another's land and hooked the plaintiff who endeavored to drive it off. See Ramsey v. Martin, 45 Pa. Superior Ct. 645.

We all know that the males of certain species of animals will almost invariably attack each other, and it was not an essential part of plaintiff's case to prove that the boar of defendant was of vicious disposition and that the owner knew it; the question should have been submitted to the jury whether the owner, if he allowed such an animal to be at large, was not chargeable with the knowledge that naturally if he were to meet another boar he would be liable to inflict injury. The learned judge, in considering the question whether the case was properly brought before a justice of the peace, commenting on the cases above cited and a number of others, concludes that branch of his opinion in these words, "I am, therefore, of the opinion that, from the trend of these authorities, an action of trespass may be maintained before a justice, where a hog escapes from the owner's property or from his control on a public road, or is permitted to run at large, and it enters the premises of another and causes damage. If, then, this was all that appeared in the present case, the plaintiff would be entitled to a verdict. It, however, was not the crucial point raised on the trial, and it becomes necessary to turn to the uncontradicted facts as established by the verdict." He then states that the two questions had been submitted to the jury; (1) whether the hog was at the time the killing occurred in possession and under

control of the defendant? and (2) whether at the time of the killing the hog belonged to defendant or some one else? The court here inadvertently fell into error. As we stated before three questions were submitted and the jury was definitely instructed as to one of them in order that he (the plaintiff) might recover, the jury must conclude not only that the hog was vicious, but as we have said that defendant knew it. Of the three questions categorically submitted this was the first. Having found for the defendant generally we cannot tell whether the verdict was premised upon the lack of proof of viciousness in the animal or upon one or other of the remaining questions. If the jury found that the animal was not vicious it was relieved under the instructions given from any consideration of the other questions. We cannot therefore say that this was "not the crucial point raised on the trial" quoting the words of the learned trial judge, when it is submitted to the jury with the language, "You must find that the hog was vicious and the owner knew it." Nor can we sustain the judgment on the theory that there should have been binding instructions for the defendant. Having admittedly been the owner of the boar on the day preceding the trespass, the jury had to determine as to the truth of his story that he had parted with his possession to one man and his ownership to another. The case must go back for retrial.

The first and second assignments of error are sustained. The judgment is reversed with a venire facias de novo.