# Fairbanks *versus* Kerr & Smith.

1. As a general rule, one is answerable for the consequences of his fault only so far as they are natural and proximate, and may therefore be foreseen by ordinary forecast: not for those arising from a conjunction of his fault with circumstances of an extraordinary nature.

2. A man mounted a pile of flagstones in a street to make a public speech; a crowd of hearers gathered about him, some of whom also got on the stones and broke them. *Held*, it was not a legal conclusion that the speaker was liable for the breaking of the stone by the bystanders.

3. It was a question for the jury, whether the defendant's making the speech in the street was the proximate or remote cause of the injury.

4. Making a speech in the street is not *per se* a nuisance.

5. The maxim *causa proxima, non remota spectatur*, discussed and illustrated.

6. Fleming *v.* Beck, 12 Wright 309; McGrew *v.* Stone, 3 P. F. Smith 436, remarked on.

November — 1871.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Lawrence county* : Of October and November Term 1871, No. 215.

This was an action on the case brought, May 2d 1868, by John D. Kerr and Christian Smith against C. A. Fairbanks.

The facts on which the action was founded are the following :— The *evidence* was not in the paper-book.

On April 27th 1868, the plaintiffs below had a contract to pave the side-walk in the town of New Castle, with flag-stones, and had provided flag-stones for that purpose. These stones were placed in the public street near the curbstone in three or four piles; each pile containing eight or ten stones laid one on the top of another, but with the ends of some of them projecting beyond the stones below and unsupported.

On the same day the defendant, C. A. Fairbanks, standing on one of the stones projecting from the end of one of the piles, commenced making a speech. No persons were near him when he commenced; but people attracted by his speaking, gathered on the street around him, and as he continued, a crowd collected, and persons from the crowd, without any direction or invitation

[Fairbanks *v.* Kerr.]

from the defendant, got upon the pile of stones where he was standing, and also on the other piles in considerable numbers, and some five or six of these persons from the crowd standing on the end of one of the stones which projected beyond the one below it and was unsupported, broke it; and the unsupported end falling on a stone beneath, it, with the weight of the persons on it, broke that stone also. The defendant, Fairbanks, was not on either of the stones broken, but was on another of the piles a few feet distant. This suit was brought to recover the value of the stones so broken.

The defendant submitted these points:—

4. If the jury believe that the defendant was simply making a speech in an orderly and peaceable manner, and that the persons who collected to hear the speech, without any direction or request of the defendant, got upon the stones and thereby broke them, the defendant is not responsible.

5. If the evidence in this case be believed, the breaking of the stones is too remote a consequence for the plaintiffs to recover.

The court charged:—

" * * * Does the evidence satisfy the jury that the plaintiffs were contractors at the time engaged in constructing a stone pavement for the owners of the bank building? If so, they had a right to place their materials for that purpose upon the public street to that extent and no more, that was necessary for that purpose; impeding the public use of the street for the purpose of travel no more than reasonably and fairly occupied, or became necessary to enable them so to do, and are not responsible for such, and would not be wrongdoers in so doing.

" The extent of this use, is one entirely for you to determine. Every case must be judged of from its own nature and the character of the materials being used and are necessary to accomplish the purpose; not so using the same to a greater extent, and for a longer period, than necessary to construct the pavement.

" It is claimed by the defendant he was not the proximate cause of the injury to the plaintiffs; and the plaintiffs claim that he was the propelling power which produced the result, either by his own weight upon the flag-stones, or in making a speech on the public street which gathered around him a crowd of persons who took possession of the plaintiffs' property, whose weight thereon produced the injury. And we have had quite an elaborate discussion upon the question.

" We understand a proximate cause is one which is a first and direct power producing the result. By a remote cause is one removed from the direct cause and may be called a secondary cause, not the propelling power in the first instance.

" Your inquiry will then be, was there such injury done as claimed by the plaintiffs? If so, was the defendant upon the

stone with others at the time it was injured ?    If he was, he would be directly responsible for the act, and the remedy would be trespass *vi et armis* for the direct injury.

" [If, however, he was not upon the stone himself which was broken, but by others who gathered around him ; collected together by the act of the defendant in making the speech in the street, who at the time had taken possession of the plaintiffs' property, and by their combined weight produced the injury, he would be responsible in an action on the case for consequential damages, which action the plaintiffs have brought in this case.]"

The points were answered as follows :—

" 4. This depends upon whether he was rightfully in the position as to the property of the plaintiffs to make the speech.    He would not be responsible for the result of the action of others for merely making the speech.    But if he commenced to make his speech by taking the possession of the property of the plaintiffs then in the public street, and thereby attracted the attention of a number of persons who also got upon the said property, and thereby placing more weight on it than the flag-stones would bear; and while so engaged the injury resulted to the plaintiffs, the defendant would be liable for the result of the injury produced to the plaintiffs in this case.

" 5. This is a question of fact for the jury to determine from the evidence in the case before them, under the instructions we have given them as to the difference between proximate and remote cause, as applicable to the injury complained of and shown by the proof to the property of the plaintiffs."

The verdict was for the plaintiffs for $56.40.

The defendant took out a writ of error, and assigned the answers to the points and the part of the charge in brackets for error.

*D. S. Morris, J. McMichael* and *D. B. Kurtz*, for plaintiff in error.

*R. B. McComb*, for defendants in error.

The opinion of the court was delivered, January 9th 1872, by Agnew, J.—Kerr & Smith, the plaintiffs below, were contractors for laying a pavement of flag-stones.    They laid up several piles of stones in the street along the curbstone, ready to begin work.    The defendant Fairbanks got upon one of these piles, and began to make a political speech.    A crowd gathered around, and some of the bystanders mounted another one of the piles, and by their weight caused several of the stones to crack and break.    Kerr & Smith sued Fairbanks for this injury.    There was no evidence that Fairbanks requested, or in anywise induced

these bystanders to stand upon the pile, excepting so far as his speech drew them together, and they mounted the pile to hear and see more conveniently. The court below held that if the persons, whose combined weight broke down the stones, were collected together by the act of the defendant in making the speech in the street, he would be responsible in an action on the case for the consequential damages. This instruction was not qualified. The court told the jury that a proximate cause is one which is a first and direct power producing the result, and a remote cause is one removed from the direct, and may be called the secondary cause; but said nothing upon the character of the act which caused the injury, and gave no instruction to ascertain whether this act was a natural or probable consequence of making the speech in the street, or one which might have been readily foreseen by the defendant. In effect, such an unqualified instruction would expose the defendant to all the consequences of his street-speech—the accidental and even the wilful acts of the bystanders gathered there by it, as well as the natural and probable consequences which he might have foreseen. Thus, if one of the crowd should by accident thrust his elbow through a window-pane, or inadvertently tread upon and break an article of show beside a door, or even if one had his pocket picked, the unfortunate speaker would be held liable for all these consequences of his speech. The court, therefore, really decided as a question of law a matter of fact properly belonging to the jury, to wit: that the mounting of the pile of stones by the bystanders was the natural and probable consequence of the speech in the street, which the defendant ought to have, or might have, foreseen. This was an error: the question was a fact dependent on all the circumstances. For example, had the second pile been two hundred feet or a square away from the speaker, no one could say that by any fair reasoning he might have expected such an accident to happen.

The maxim *causa proxima non remota spectatur* governs cases of this kind, and yet its application is not always easy. Many cases illustrate, but none define, what is an immediate or what is a remote cause. Indeed, such a cause seems to be incapable of any strict definition which will suit in every case. It was said in Morrison *v.* Davis & Co., 8 Harris 171, the general rule is, that a man is answerable for the consequences of a fault only so far as the same are natural and proximate, and as may, on this account, be foreseen by ordinary forecast, and not for those which arise from a conjunction of his fault with other circumstances that are of an extraordinary nature. Of the first branch of this proposition, Scott *v.* Hunter, 10 Wright 192, is an illustration. Therefore a defendant who unnecessarily occupied the passageway to the locks of one of the dams of the Monongahela slackwater, from the afternoon of one day till the afternoon of the

following day, holding the boats of the plaintiff into the stream, while it was rising rapidly, until the flood carried them over the dam, was held to be liable for the injury. The court below thought the flood was the proximate cause of the injury, and the occupancy of the access to the locks by the defendant was too remote; but this court reversed the judgment. The question whether the defendant ought not to have apprehended the danger to the plaintiff's boats when the stream was rising rapidly was not submitted to the jury, and hence, said Mr. Justice Strong, here, we think, the court erred in assuming to decide as a matter of law that the wreck of the boats was not the natural consequence of the wrongful act of the defendant in blocking up the locks and channel of the river, and holding the boats of the ·plaintiff so long exposed to the force of the current. It was a *natural* consequence, he says, *if it should have been foreseen,* or if it would have been guarded against by men of ordinary prudence, using their own rights with proper regard to those of others. On the other hand, Morrison *v.* Davis & Co., *supra*, is an illustration of the second branch of the proposition. There the accident happened in consequence of the boat being overtaken and sunk by an extraordinary flood at Piper's dam, on the Juniata, but which the boat would have passed safely had it not been delayed by the defendants using a lame horse. This court held that the proximate cause destroying the boat and cargo was the flood, and that the use of the lame horse which led to the unforeseen conjunction of the happening of the flood and of the boats being at the dam at the same time, was too remote a cause to create a liability for the loss of the plaintiff's goods. Doubtless the delay produced by using the lame horse was a cause of the accident, but it was not a probable cause, for it could not be foreseen that it would unite with the flood at a place of danger to produce it. In Mc-Grew *v.* Stone, 3 P. F. Smith 441, it was said by myself, as the result of the cases, that the maxim *causa proxima non remota spectatur* means but this: We are not to link together, as cause and effect, events having no probable connection in the mind, and which could not, by prudent circumspection and ordinary thoughtfulness, be foreseen as likely to happen in consequence of the act in which we are engaged. It may be true that the injury would not have occurred without the concurrence of our act with the event which immediately caused the injury; but we are not justly called to suffer for it, unless the other event was the effect of our act, or was within the probable range of ordinary circumspection when engaged in the act. But when we are engaged in an act which the surrounding circumstances indicate may be dangerous to others or their interests, and when the event whose concurrence is necessary to make our act injurious, is one we can readily see may occur under the circumstances, and unite with the act to

[Fairbanks v. Kerr.]

inflict an injury, we are culpable if we do not take all the care which prudent circumspection would suggest to avoid the injury.

This subject of near and remote consequences has been largely discussed by the present Chief Justice in the recent case of Pennsylvania Railroad Co. v. Kerr, 12 P. F. Smith 353. It is certain, he says, that in almost every considerable disaster, the result of human agency and dereliction of duty, a train of consequences generally ensues, and so ramify as more or less to affect the whole community. Indemnity cannot reach all these results, although parties suffer who are innocent of blame. In that case the railroad company was held not to be responsible for the ulterior consequences to other houses caused by the negligent burning of a warehouse on the line of their road from the sparks of one of their engines. In Fleming v. Beck, 12 Wright 313, remarks pertinent to this subject may be found. Among other things it was there said, that in strict logic it may be said that he who is the cause of loss should be answerable for all losses which flow from his causation. But in the practical workings of society the law finds in this, as in a variety of other matters, that the rule of logic is impracticable and unjust. It is impossible to compensate for all losses, and the law, therefore, aims at a just discrimination which will impose upon the party causing them the proportion that a proper view of his acts and the attending circumstances would dictate.

In view of these principles it would be difficult to decide, as a legal conclusion, that the defendant is liable for the breaking of the stones in question by the bystanders. It cannot be said with *judicial* certainty, that when he stopped to make his speech in the street he must have foreseen, as the natural and probable consequence of his act, the persons collecting together to listen to him would mount the pile of stones, and even, if some of them would, that so many would as by their collected weight might break some of the stones. The lowermost stones in the pile were already trusted by the plaintiff with the weight of the uppermost. Height of pile, strength of grain, distance from the speaker, number of bystanders, and perhaps other circumstances, all would enter into the question of the probability of injury. The question was, therefore, one of fact for the jury, and not of law for the court.

Much stress was laid in the argument on the fact that the defendant was guilty of a nuisance, by collecting a crowd, and the case of Barker v. The Commonwealth, 7 Harris 412, is relied on. But, conceding that the defendant might have been indicted for a nuisance, it adds nothing to the civil injury complained of here. The question would still remain, whether the defendant's making his speech in the street was the probable and proximate cause of the injury. The nuisance and the civil injury are different things. It was not because the crowd obstructed the highway, and was therefore a nuisance, that the plaintiffs' stones were broken; but

[Fairbanks *v.* Kerr.]

because some of the crowd mounted the pile of stones. But it cannot be conceded, in the broad sense in which it was contended, that making a speech in the street is *ipso facto* and *per se* a public nuisance. The indictment against Barker was for obstructing the streets of Pittsburg, through crowds collected by means of violent, loud and indecent language addressed to those passing by; and by this means collecting assemblages of men, boys, and idle, dissolute and disorderly persons. A street may not be used, in strictness of law, for public speaking: even preaching or public worship, or a pavement before another's house may not be occupied to annoy him ; but it does not follow that every one who speaks or preaches in the street, or who happens to collect a crowd therein by other means, is therefore guilty of the indictable offence of nuisance. His act may become a nuisance by his obstruction of the public highway, but it will not do to say it is a nuisance *per se*. Such a stringent interpretation of the case of Barker is scarcely suited to the genius of our people or to the character of their institutions, and would lead to the repression of many usages of the people now tolerated as harmless, if not necessary. Those who draw crowds together in the street by window displays, music, parades, and the like, might be made answerable for many misfortunes if the doctrine of nuisance be so extensive in its consequences.

Judgment reversed, and a *venire facias de novo* awarded.