# Pool, Appellant *v.* Van.

*Negligence—Brass band—Fright of horse—Animals.*

In an action against the leader of a band to recover for loss of a horse, where the evidence shows that the defendant's band took a stand at the intersection of two streets, gathering a crowd around it, and leaving only a narrow passageway open, and that plaintiff's horse took fright at the sound of the drums and brasses, and as a result sustained injuries in consequence of which he had to be killed, the question whether the use of a street by the band was an ordinary one or an extraordinary one, and whether the playing of the band was the proximate cause of the accident is for the jury.

Argued Oct. 29, 1908. Appeal, No. 134, Oct. T., 1908, by plaintiff, from order of C. P. Clearfield Co., Feb. T., 1908, No. 113, refusing to take off nonsuit in case of James Pool v. Woody Van. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Trespass to recover damages for death of a horse. Before A. O. SMITH, P. J.

The facts are stated in the opinion of the Superior Court.

The trial judge entered a compulsory nonsuit which he subsequently refused to take off.

*Error assigned* was order refusing to take off nonsuit.

*Singleton Bell*, with him *Howard B. Hartswick*, for appellant. —The rights of the plaintiff at the time were superior to that

of the band as to the use of the street, the plaintiff being an actual traveler, and the band simply standing on the street: Davis v. Corry City, 154 Pa. 598; Com. v. Passmore, 1 S. & R. 217; Potter v. Gas Co., 183 Pa. 575; Vallo v. Express Co., 147 Pa. 404; Stehle v. Poth, 220 Pa. 335; Addis v. Hess, 29 Pa. Superior Ct. 505; Com. v. Allen, 148 Pa. 358; Cook v. Dolan, 6 Pa. Dist. Rep. 524.

The user of the street for any proper purpose, save passage, must be with the exercise of due care that travelers are not injured: Vallo v. Express Co., 147 Pa. 404; Potter v. Gas Co., 183 Pa. 575; Lamb v. Pike Twp., 215 Pa. 516.

The acts of the defendant were negligent and there was want of due care under the circumstances: Penna. R. R. Co. v. Barnett, 59 Pa. 259; P., W. & B. R. R. Co. v. Stinger, 78 Pa. 219; Kreiner v. Straubmüller, 30 Pa. Superior Ct. 609; Obold v. Traction Co., 19 Pa. Superior Ct. 326.

What is proper care must depend on the facts of each case, and where the precise measure of duty is not determinate the same under all circumstances, the case is for the jury: P., W. & B. R. R. Co. v. Stinger, 78 Pa. 219; Potter v. Gas Co., 183 Pa. 575.

A person who speaks in the street and thereby collects a crowd is not committing a nuisance per se, but it will become a nuisance if it becomes an obstruction of the public highway: Fairbanks v. Kerr, 70 Pa. 86; Com. v. Spratt, 14 Phila. 365.

The fair test is whether the acts done were likely and calculated to frighten a quiet, well-broken horse.

This test has been fully established as to fright by sight, and no other reasonable test can be applied to fright by sound: Mallory v. Griffey, 85 Pa. 275; Fritsch v. Allegheny, 91 Pa. 226; Piollet v. Simmers, 106 Pa. 95; North Manheim Twp. v. Arnold, 119 Pa. 380; Keeley v. Shanley, 140 Pa. 213; Baker v. North East Borough, 151 Pa. 234; Ide v. Lake Township, 191 Pa. 182.

The trend of judicial opinion elsewhere appears in Lynn v. Hooper (Maine), 47 L. R. A. 752; Topeka Water Co. v. Whiting (Kansas), 39 L. R. A. 90; Ayer v. Norwich, 39 Conn. 376; Foshay v. Glen Haven, 25 Wis. 288; Darling v. Westmoreland,

52 N. H. 401; Morse v. Richmond, 41 Vt. 435; Cushing v. Bedford, 125 Mass. 526.

*David L. Krebs,* with him *A. M. Leveright,* for appellee.—
It has been decided that the right partially to obstruct a street is not limited to a case of strict necessity, but it may extend to purposes of convenience and ornament: City of Allegheny v. Zimmerman, 95 Pa. 287; Piollet v. Simmers, 106 Pa. 95.

It has been held, further, that parades with music and flags may be indulged in, and that a parade of strikers is as legitimate a use of the streets as political parades, or those of the Salvation Army: Cook & Sons v. Dolan et al., 6 Pa. Dist. Rep. 524.

Where a plaintiff and a defendant have equally the right to the use of a street, a defendant is not responsible to a plaintiff whose horse was injured because of defendant's exercise of his right, unless at the same time there was an abuse of the right: Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306; Hazel v. People's Pass. Railway Co., 132 Pa. 96; Steiner v. Philadelphia Traction Co., 134 Pa. 199; Yingst v. Lebanon, etc., Street Railway Co., 167 Pa. 438; Farley v. Harris, 186 Pa. 440; Davison v. Traction Co., 10 Pa. Superior Ct. 442; McKinney v. United Traction Co., 19 Pa. Superior Ct. 362; Fouhy v. Penna. Railroad Co., 17 W. N. C. 177.

OPINION BY BEAVER, J., February 26, 1909:

Assuming the facts relating to this case as contained in the counterstatement of the appellee, they are as follows: "On January 4, 1908, between 11:00 o'clock and 11:30 o'clock A. M., a band connected with a theatrical company marched west along Market street in the borough of Clearfield. When it reached the intersection of Second street, the band circled and stood on the roadway at the intersection, playing a selection. Around the band gathered and pressed a large concourse of people. Between the mass formed by the band and the encircling crowd and the curb at the southwest corner of Second and Market streets, a passageway, variously estimated at eight to twelve feet in width, was left for the use of horses and vehicles.

On the same morning three teams, of which the plaintiff's was the last, were coming north on Second street toward Market street in close order, and for two blocks ahead the plaintiff had a view of the intersection with Market street. As the teams left the corner to turn into Market street, the first and second successfully traveled the passageway between the crowd and the curb, with the horses of the third team close upon the wagon of the second. The band played just as the first team had cleared the crossing at the intersection of the streets. When the third team reached the point opposite the circle, the drum was beating and the brasses were played, and the plaintiff's horse made several jumps. In some unexplained way its leg was broken, and the horse had to be killed."

The appellee states the questions involved:

"1. Does the temporary occupancy of a street and the playing of a band, while so occupying the street, make the leader of the band liable, in action for damages because of the injury to a horse happening from alleged fright of the horse when the owner deliberately attempted to drive the horse past the band?

"2. Is the playing of a band on the public street a nuisance per se?"

As we view the case, from an examination of all the testimony, of which the statement of facts in the appellee's counterstatement is reasonably fair, we cannot regard it as a question of law as to whether or not the band had the right to occupy the street, as it was occupying it, nor could the court determine, as a matter of law, that the action of the band was not a nuisance. The court was influenced as stated to the jury in granting the nonsuit: "As you have heard, at the close of plaintiff's testimony, a motion was made on the part of the defendant for a compulsory nonsuit. That is a question of law pure and simple and is not a question for the jury. As we look at this case, the band had the same right of passage over the street that anybody else had, that is, temporarily, and temporarily to occupy the street for the purpose of playing music. Whether that was loud, offensive music or not is not in the case, and they having that right, the only thing that would make them liable for any act such as alleged here of scaring a horse, would be that they did it

negligently or in a way that resulted in the injury, and it is not contended here, by the counsel for the plaintiff, who makes a very strong plea, that they have the right to recover here; it is not contended that they have shown any act of negligence. That question we would have had to leave to the jury, if they had so shown. His contention is purely basic, going back to the right of the band to be there, with which we do not agree. He can test that matter in another court."

In Commonwealth v. Allen, 148 Pa. 358, which was a case in the quarter sessions, in which the defendants were indicted for maintaining a nuisance, by using a traction engine for hauling stone from a quarry to the railroad, and in which they were convicted, the Supreme Court, in affirming the judgment, said: "As a general rule, highways and bridges are constructed for ordinary use, in an ordinary manner, and not for an unusual or extraordinary use, either by crossing at great speed, or by the passing of a very large and unusual weight."

As we view the case under discussion, the question as to whether or not the band, under the direction of the defendant, was using the highway in an ordinary manner and for an ordinary purpose would be one for the jury. It may be, as stated by the court below in granting the nonsuit, that the band had a right of passage over the street and that, in the act of passing, they had the right to play upon their instruments, but this was a very different question from that presented by the facts. The band had made a circle at the intersection of two streets, around them assembled a concourse of people, leaving a narrow passageway at the side for the passage of the public. Was this an ordinary use of the public highway for ordinary purposes, or in an ordinary manner, and not an unusual or extraordinary use? It was for a jury to say.

This appears very clearly from Coulter v. Pine Twp., 164 Pa. 543, which is also a case involving the right to use a traction engine, but in which the present chief justice distinguishes between Clulow v. McClelland, 151 Pa. 583, and Com. v. Allen, 148 Pa. 358, and referring to the general use of the highway and whether or not the use of the engine became an ordinary use, he said: "This generality of use would, of course, ordinarily be a

question for the jury," and further says: "On the main issue the jury were told, 'This case turns upon the question, whether or not traction engines had become a usual and ordinary mode of travel when the supervisors · reconstructed the bridge in June, 1888.' It was a question for the jury and was thus submitted in exact accord with the principles of Clulow v. McClelland. The difference in result was due to the difference in the facts, as appearing there in plaintiff's own evidence and as found here by the jury."

If this question had been left to the jury and their finding had been that the use of the street, as made by the defendant and his band, was an extraordinary use, such as was not justified under the rule as laid down in Commonwealth v. Allen, 148 Pa. 358, another question would probably have arisen, namely, as to the proximate cause of the accident. It is not necessary to consider that question now, inasmuch as it would also be one for the jury, under proper instructions.

This phase of the case has been considered very fully by Mr. Justice Agnew in Fairbanks v. Kerr, 70 Pa. 86. We think there was evidence in this case which should have gone to the jury on this phase of it, if they had found that the street was being used by the defendant and his band in an unusual way, for an extraordinary purpose.

In Scott et al. v. Hunter et al., 46 Pa. 192, referred to in Fairbanks v. Kerr, 70 Pa. 86, Mr. Justice Strong said: "It is observable that the jury did not pass upon the question whether the defendants ought not to have apprehended that their unlawful and continued obstruction of the entrance to the locks might result in the plaintiffs' boats being swept by the current over the dam, and lost, as they were. This was not submitted to them. The court assumed that the sudden rise of the river, and the danger to the plaintiffs' boats, could not have been anticipated by ordinary prudence and care. Now it is very obvious that if the defendants, while they were wantonly or negligently keeping their own boats at the entrance of the locks, and preventing the passage of the plaintiffs', knew the danger to which their unlawful act exposed the property of the plaintiffs, as it is averred in the declaration they did, they are responsible for the

damage which resulted from their act, though it was not the most proximate cause. And so, if they ought to have known the danger, as men of ordinary prudence, and yet persisted in maintaining the obstruction, they are responsible. It is a familiar principle that a man is answerable for such consequences of his unlawful acts as are natural, and may be foreseen by ordinary forecast. What is ordinary care in the performance of an act depends upon the surrounding circumstances."

In this case, it was further said: "And it was manifestly for the jury to determine whether it was a natural consequence, such as should have been foreseen by the defendants at the time, and in the circumstances in which they acted, or rather in which they failed to act."

The facts in this case, as we view them, clearly raise two questions: Was the defendant using the public streets in the ordinary way, for an ordinary purpose, and, secondly, was such a use as he made of the street, if the jury should find that it was unusual and extraordinary, the proximate cause of the accident to the plaintiff's horse? If both of these questions were answered in the affirmative by the jury, it seems to us the plaintiff would have been entitled to recover.

Judgment reversed with a new venire.

MORRISON, J., dissents.