OPINION
AMBRO, Circuit Judge.
In 2007, Luis and Deborah Munoz obtained a jury verdict against the City of Philadelphia and the Philadelphia Redevelopment Authority (collectively, the “City”). The basis of the Munozes’s suit was their assertion that the City’s failure to provide them with timely notice of its intention to condemn their property caused their business to fail, in addition to causing them various emotional harms associated with the loss of their business. The City now seeks reversal of the District Court’s denial of its post-trial motion for judgment as a matter of law.[1] Because we are convinced the evidence was insufficient to allow the jury to find that the alleged lack of notice caused the damages alleged, we reverse the District Court and grant the City judgment as a matter of law.
I.
In August 2001, the Munozes invested their life savings and pledged their home as collateral to buy Nino’s Farmer’s Market in Philadelphia’s Juniata section for $1 million.[2] Revenues fell by more than 50% in the first year after the Munozes bought the market, they stopped paying their mortgage in July 2002, and the business closed in April 2004, having never turned a profit. The Munozes filed for bankruptcy *768 in May of that year and lost both the market and their home to satisfy creditors.
Shortly after the Munozes bought the market, rumors spread that it would be closed by the City of Philadelphia as part of a redevelopment plan, but it took years for the Munozes to receive confirmation from the City. Starting in the spring of 2002, Deborah Munoz failed in attempts to get confirmation from her Councilman, Rick Mariano, or the City Planning Commission. In August and September 2003, the Munozes met with Steve Culbertson, Executive Director of Frankford Community Development Corporation (FCDC), to whom Deborah Munoz had been referred by the City Planning Commission, but failed to get confirmation from him as well. The Munozes first learned from the City that it was considering condemning their property in March 2004, the month before the market closed. Because they lost the market to creditors before the City had a chance formally to condemn it, they never received compensation from the City.
Condemnation in Philadelphia is a multistep process. The City Planning Commission designates the target area as “blighted” and the Philadelphia Redevelopment Authority (“RDA”) then prepares a proposal for redevelopment. The City Council passes an ordinance approving the proposal. The RDA then finalizes the list of properties that must be seized, offers compensation to owners, and declares a taking on those properties whose owners refuse to sell.
FCDC, a non-profit housing developer, started trying to create federally funded housing in the neighborhood in May 2002. By September 2002, FCDC, City, and Commonwealth officials appear to have identified the farmer’s market as an important part of the redevelopment area. That month, the City Planning Commission issued a blight certification that included the market. When the RDA’s redevelopment proposal left the market out of the plan, Culbertson pushed to add it, receiving some indication in April 2003 from Mariano that it would be included. But at his meetings with the Munozes, Culbertson did not tell them that he had been pushing to condemn their market.
In March 2004, the RDA added the farmer’s market to the redevelopment area and gave the Munozes their first official indication that the market might be condemned. The City Council notified them in May that it would vote on the plan and passed it in June. A week later, the RDA sent a “Notice of Interest” to the Munozes stating that it was “considering” acquiring their property. In May 2004, the Munozes filed for bankruptcy.
In 2005, the Munozes brought a 42 U.S.C. § 1983 action against the City, the RDA, and the FCDC, arguing that they forced the market out of business in order to avoid having to compensate the Munozes for it. They alleged that the City accomplished this de facto taking by delaying formal steps to acquire property in the redevelopment area while using the FCDC to spread rumors about the redevelopment that killed the business. According to the Munozes, rumors that the City would take the farmer’s market caused customers to boycott it either because they preferred not to shop at a moribund store or because they disapproved of the Munozes, thinking that they were speculators who purchased the market to flip it to the City for a profit.[3] The complaint included a claim that 42 U.S.C. § 4625(a), a part of the Uniform Relocation Assistance and Real Property Acquisition Policies Act (URA), required the City to provide the Munozes *769 with timely notice of its plans and an offer of just compensation.
The District Court dismissed the Munozes’ takings and due process claims (they had not exhausted state court remedies), and threw out the part of their URA claim based on the requirement of a timely offer of just compensation (the Court concluded that the URA provides no private right of action to vindicate that requirement).[4] Only the Munozes’s URA timeliness claim remained.[5] The Munozes could no longer win by showing that rumors created by the City killed their business. They now had to show that lack of timely notice of the redevelopment plan did so. The Munozes persevered and a jury concluded that notice was untimely, awarding them $497,230 ($379,230 for the decrease in the value of the business caused by lack of notice, $68,000 for relocation of the business, and $50,000 for emotional distress). Following the verdict, the City moved for judgment as a matter of law on multiple grounds. The District Court eliminated the award of relocation expenses because the Munozes never actually relocated the market, but otherwise rejected the City’s arguments. The City timely appealed.
II.
The City challenges the jury verdict against it on three independent grounds. It argues that (1) neither 42 U.S.C. § 4625(a), nor its implementing regulation, 49 C.F.R. § 24.203, creates a private right to notice that may be enforced via § 1983; (2) the notice provided here was not untimely under § 4625(a); and (3) the evidence was insufficient to show that the Munozes’s damages were actually caused by the alleged lack of timely notice. Because we agree that there was not minimally sufficient evidence to prove causation, we do not reach the City’s other two arguments on appeal.[6]
We exercise plenary review of the District Court’s denial of the City’s post-trial motion for judgment as a matter of law. CGB Occupational Therapy v. RHA Health Services, 357 F.3d 375, 383 (3d Cir.2004). In doing so, we review the District Court’s conclusions of law de novo and ask whether there is enough evidence to support the verdict. A small amount is enough, but “[although judgment as a matter of law should be granted sparingly, more than a scintilla of evidence is needed to sustain a verdict.” Id. (internal quotations omitted).
Though we are wary of overturning jury verdicts, we reluctantly reverse the District Court because there is no evidence of causation. The Munozes argued that 42 U.S.C. § 4625(a) and its associated regulation, 49 C.F.R. § 24.203, required the City *770 to notify them of the redevelopment plans when City and Commonwealth officials discussed taking the farmer’s market in September 2002 or April 2003 (long before the City first communicated with the Munozes in March 2004). The jury was charged with deciding whether the notice provided was timely, and, if not, what damages, if any, are attributable to the lack of timely notice. It found that notice was untimely and the untimeliness was responsible for about two-thirds of the decline in value of the business as well as various emotional damages tied up with the loss of the business.
But the jury verdict falls if the Munozes did not show minimally sufficient evidence that untimely notice caused the drop in the value of their business. This is because, in general, they must prove that a violation of federal law (i.e., the URA notice requirement) caused their injuries before they can recover from the violator under § 1983. See Smith v. Wade, 461 U.S. 30, 34, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (looking to modern and 1871 common law of torts for guidance in applying § 1983); 1 Dan B. Dobbs, The Law of Torts 405 (2001) (discussing requirement of factual causation); Fairbanks v. Kerr, 70 Pa. 86 (1871) (same).
The Munozes sought to show causation by alleging that the uncertainty created by lack of notice prevented them from taking action to save them investment in their dying business. They allege that, with timely notice, they would have either-moved their money out of the business (i.e., sold the business and invested their money elsewhere, perhaps in another market at a different location) or further leveraged it (i.e., borrowed more to improve the business).
What constitutes enough evidence for a jury to find causation ultimately depends on how much elaboration and substantiation a court needs before it feels comfortable letting a jury decide whether causation exists. If a court thinks that an alleged link between breach and injury is not minimally substantiated, it will require a plaintiff to identify more steps in the causal chain through which breach led to injury and to provide evidence to substantiate each step. The lightest burden requires a plaintiff to show only that injury followed breach. A heavy burden requires a plaintiff to allege numerous links in a causal chain and to produce evidence of correlation for each link.
We do not think that the likelihood that the Munozes’ investment in the business would be injured because of uncertainty is so self-evident that no amount of elaboration and substantiation was required. The Munozes had to provide some amount of evidence supporting their account. This they did not do. They provided only their own testimony that they would and could have moved, sold, or leveraged their business if they had timely notice under the URA. They provided no account of why uncertainty prevented them taking such actions and no evidence suggesting that such actions would have mitigated the decline in value of their business. There is no evidence, even anecdotal,[7] relating to the likelihood that additional investment in the business would lure back customers boycotting the store after the City confirmed that it was considering taking it.[8] *771 There is also no evidence, even anecdotal, relating to the likelihood that the Munozes would have found a profitable alternative location for the market or a buyer willing to pay their price after the City confirmed that it was considering taking the market. Without such evidence, we believe that the District Court should not have allowed the jury to decide causation.
This conclusion requires vacating not only the jury’s award of damages for the loss of value of the Munozes’s business, but also its award of damages for emotional distress.[9] The Munozes sought compensation for the emotional distress brought on by their inability to save their business (and the investment they poured into it). Because there was insufficient evidence to support a finding that the lack of notice caused the decline of the business, there was also insufficient evidence to find that the lack of notice itself caused the emotional distress of which the Munozes complained.
We repeat our reluctance to reverse a jury verdict. Doing so in this case, where the jury found in favor of sympathetic plaintiffs who suffered greatly from the collapse of their business, is especially difficult. But we can find nothing in the record to support the conclusion that the mere failure of the City to confirm its plans drove down the revenues of the Munozes’ business. We note, however, that the question whether lack of notice caused the business to collapse is distinct from whether the City ought to have paid just compensation to the Munozes under a de facto takings theory. Now that they have apparently exhausted their state remedies, the Munozes may still prevail on their takings claims should they refile in federal court.[10]
For these reasons, we reverse the District Court’s denial of the City’s post-trial motion for judgment as a matter of law and grant it judgment as a matter of law.[11]

. The District Court had jurisdiction under 28 U.S.C. § 1331 and, alternatively, 28 U.S.C. § 1343. We have jurisdiction under 28 U.S.C. § 1291.

. They formed General Farmer’s Market, Inc., to run the business.

. The City alleged that sabotage by the prior owner, Luis Munoz’s illness, and other factors, not rumors about the redevelopment, destroyed the business.

. The Munozes pursued their takings claims in state court and lost because they could not show causation. The Court of Common Pleas found that the value of the business declined independently of the proposed condemnation. Munoz v. Philadelphia, No. 2621, slip op. (C.P.Phila.Co. Mar. 26, 2007), aff'd, Munoz v. Philadelphia, No. 806 CD 2007, slip op. (Pa. Commw.Ct. Apr. 30, 2008). Having exhausted state remedies, the Munozes are contemplating bringing their takings claims again in federal court.

. At the close of evidence, the District Court dismissed the FCDC because it was not a state actor.

. We highly doubt whether, in light of Gonzaga University v. Doe, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), 42 U.S.C. § 4625(a) does create a private right enforceable under § 1983. Nonetheless, because we believe that, even if the statute were to create such a right, the Munozes could not show that the City’s alleged violation of that right caused the damages they assert, we avoid that more difficult question and decide the case purely on the issue of causation.

. The testimony of Luis Munoz that he had friends willing to provide more financing for the business is perhaps a scintilla of evidence in support of the claim that the Munozes could have invested more in the business. It is not evidence of the likelihood that additional investment would have forestalled their losses.

. It should be noted that, if we accept the Munozes's claims that customers boycotted the business because they did not want to shop at a failing market or thought the Munozes were speculators, confirmation that the City was in fact considering taking the business could not in itself have removed the boycotters' concerns and probably would have strengthened them.

.The Munozes contend that “[t]he City ... ha[s] not challenged on appeal the ... proof of emotional distress damages.” Munozes's Br. at 41 n. 6. By this, we take them to mean that the City has not renewed the argument— initially made in its post-trial motion for judgment as a matter of law — that, because the Munozes put forth no evidence to support their claims of emotional distress other than their own testimony, that portion of the award should be set aside even if the award for loss of value of the business is allowed to stand. There is no suggestion — nor could there be plausibly — that the City waived its right to challenge the damages for emotional distress on the general ground that the evidence was insufficient to show that lack of timely notice caused any of the damages asserted. Thus, waiver does not come into play.

. We express no view as to the viability of such a claim.

. In addition, we deny the motion of the Munozes to add items from their state takings proceeding to the Appendix or to strike portions of the Appendix and the City’s brief containing items from that proceeding. The record of a related state case is a proper object of judicial notice. See, e.g., Lumen Const. v. Brant Const., 780 F.2d 691, 697 (7th Cir.1985) (’’[Ajppellants included extensive references to the state court proceedings in their own briefs and appendix. [T]he official record of the parallel state case is a proper object for judicial notice.”). We were at liberty to consult the materials the Munozes wished to add to the Appendix.