# Reardon, Appellant, *v.* Philadelphia Rapid Transit Company.

*Negligence—Street railways—Passengers—Fright.*

1. The rule that a plaintiff in a negligence case cannot recover damages on account of fright alone or the consequences of it, applies in an action by a passenger against a street railway company or other common carrier.

2. In an action against a street railway company by a woman passenger to recover for injuries alleged to have been sustained in

a collision, where the plaintiff testifies that she became unconscious at the time of the collision, and that thereafter she suffered nervousness and pains in her head, there is no case for the jury, unless the plaintiff further shows that the conditions from which she suffered were caused wholly or partly by physical violence.

Argued Dec. 17, 1909.  Appeal, No. 112, Oct. T., 1909, by plaintiff, from judgment of C. P. No. 1, Phila. Co., March T., 1907, No. 1,160, for defendant non obstante veredicto in case of Louise Reardon v. Philadelphia Rapid Transit Company.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries.  Before BRÉGY, P. J.

The facts are stated in the opinion of the Superior Court.

The jury returned a verdict for $500.  Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Clarence P. Sterner*, for appellant.—Sufficient evidence was produced to prove personal contact sufficient for recovery: Hess v. Pipe Mfg. Co., 221 Pa. 67; Palmer v. St. Ry. Co., 206 Pa. 574; Traction Co. v. Lambertson, 59 N. J. L. 297 (36 Atl. Repr. 100); Buchanan v. West Jersey R. R. Co., 52 N. J. L. 265 (19 Atl. Repr. 254); Warren v. R. R. Co., 163 Mass. 484 (40 N. E. Repr. 895); Berard v. R. R. Co., 177 Mass. 179 (58 N. E. Repr. 586); Homans v. Ry. Co., 180 Mass. 456 (62 N. E. Repr. 737); Jones v. R. R. Co., 48 N. Y. Supp. 914.

It is submitted that in no case have the courts of the United States or England refused to allow recovery in a case like the one at bar, when the injuries were received as the direct result of a collision: Gulf, Colorado, etc.,

Ry. Co. v. Hayter, 93 Tex. 239 (54 S. W. Repr. 944); Purcell v. Ry. Co., 48 Minn. 134 (50 N. W. Repr. 1034); Mack v. R. R. Co., 52 So. Car. 323 (29 S. E. Repr. 905); Denver, etc., R. R. Co. v. Roller, 100 Fed. Repr. 738; O'Connor v. Traction Co., 180 Pa. 444; Reading City Pass. Ry. Co. v. Eckert, 2 Sadler Sup. Ct. Cases, 31.

*Thomas Leaming*, with him *Harry S. Ambler, Jr.*, for appellee.—A court never submits to a jury any question which can only be answered by a guess: Green v. Pittsburg, etc., St. Ry. Co., 219 Pa. 241; Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306; Frazier Bros. v. Lloyd, 23 W. N. C. 178; Chilton v. Traction Co., 152 Pa. 425; Howard Exp. Co. v. Wile, 64 Pa. 201; Laven v. Moore, 211 Pa. 245; Sowers v. McManus, 214 Pa. 244; Alexander v. Water Co., 201 Pa. 252.

Mere fright without physical injury is not a cause of action in Pennsylvania: Huston v. Freemansburg Boro., 212 Pa. 548.

OPINION BY RICE, P. J., July 20, 1910:

The plaintiff described the accident as follows: "I was coming up in an Eleventh street car, after the performance; we were sitting in a seat running lengthwise; at Market street, I remember that a car coming down crashed into our car; I was just putting my money in my pocketbook when it crashed into us; I remember the crash, and that I was on the point of getting up, and that is all I remember; I remember the glass crashing; afterwards, when I came to, I was in the Jefferson Hospital." It should be noticed that she was sitting on the right-hand side of the car going north and that the Market street car was going east; therefore, the latter did not strike the side of the car on which she was sitting. Beyond the statement that the Market street car crashed into the car in which she was riding, the force of the collision is not shown. Later, in her examination in chief, she having testified that she had no marks or bruises on her body, her coun-

sel said: "You were simply knocked unconscious in the car?" Her reply was: "Yes, sir; it affected my head." This answer to the leading question of the counsel was materially qualified on her cross-examination, from which we quote: "Q. On this occasion were you knocked unconscious or did you faint from the scare?   A. All I know is, that when I saw the glass crashing I wanted to jump to get out of the way—and that is all I know; whether it was a shock or a throw, I can't tell you.   Q. Are you prepared to say whether you were rendered unconscious by a blow or fainted from the excitement?   A. It might have been from the excitement.   Q. Did you receive any blow on the head which would have rendered you unconscious?   A. Not that I know of—only having that intense pain at the back of my head here [indicating]; I do not know whether I was struck on the head or not; and my sister did not know."   Her sister, who, if anyone, would be likely to know whether the plaintiff received a blow upon the head or other part of her body, whether by a fall or otherwise, was not called as a witness, and doubtless the plaintiff spoke the exact truth when she said her sister did not know.   The only other eyewitness to the accident who was called was Doctor Treiman, who testified as follows: "I was about returning from the Reading Terminal and was about midway of the square when I heard a crash; I saw that something had happened to the car; I ran up there and my first idea was to attend to the human beings; I found Mrs. Reardon lying on one of the benches and a young lady, her sister, was trying to help her out; Mrs. Reardon was totally unconscious; her sister was distracted; and as soon as she found out that I was a physician the sister asked me to help her."   From such examination as he made at that time and during the two subsequent days that he attended her, this witness found no marks or bruises on her body; he said she complained of the back of her head, but he could not discover any swelling there or any abrasion.   Doctor Hahn, the family physician, succeeded Doctor Treiman on the

fourth day after the accident and attended the plaintiff for some time. He likewise testified that "there were no objective symptoms, no blows, or bruises or cuts or scratches whatever." It is seen from the foregoing resumé that a finding that the plaintiff received a physical injury from some flying object coming in contact with her body or from her body being thrown against some solid object or from a sudden jolt, would be unwarranted by the evidence thus far referred to. Nor, having regard to the medical testimony adduced by the plaintiff, is the fact of that kind of direct physical injury inferable with any greater degree of certainty from the nature of the conditions that ensued. These were sudden unconsciousness, followed by extreme nervousness and pains in the occipital region for a considerable period, and hastened and excessive menstruation. Neither Doctor Treiman nor Doctor Hahn undertook to express an opinion, based on his professional knowledge and skill and his observations during his treatment of the plaintiff, that the conditions from which she suffered were caused by physical violence. The latter's testimony as to the cause is fairly summarized in the following extracts: "By the Court: Q. Is it possible for you to tell what it comes from? A. No, sir; unless it is a reflex through the nervous system. Q. Could violence or shock cause it? A. Yes, sir; shock to the nervous system. Q. That could cause the condition you found? A. Yes, sir. Q. But you could not tell that? A. No, sir. Q. Other things could cause it, too? A. Yes, sir. Q. For instance, disease? A. Yes, sir." Again, on cross-examination, he testified: "Q. You made no internal examination of her? A. I did not. Q. All you found could be ascribed to nervousness resulting from fright? A. Shock or fright. By Mr. Sterner: Q. Either shock or fright, or a blow or violence? A. Yes, sir." We quote also from the testimony of Doctor Treiman: "Q. Could violence have caused the condition you found her in? A. Yes, sir. Q. Or fright? A. Yes, sir. Q. But what caused it would simply be a guess on your

part? A. Yes, sir." A review of the entire evidence of
all kinds leads to the result that there is nothing more
than conjecture from a bare possibility to sustain an in-
ference that the conditions from which the plaintiff suf-
fered were caused wholly or partly by physical violence.
According to all the authorities, many of which are cited
in the appellee's brief, this was not sufficient to warrant
submission of the case to the jury with permission to
draw that inference, particularly as under the plaintiff's
own testimony and the testimony of her witnesses the
probability of their having been caused by fright alone
is equally if not more reasonable. A verdict, under such
circumstances, sustaining the former inference would, as
was said in Philadelphia and Reading Railroad Co. v.
Schertle, 97 Pa. 450, and again in Green v. Pittsburg,
etc., Street Railway Co., 219 Pa. 241, "have no better
foundation than a guess, or at most mere possibilities,
and this will not do."

The remaining question to be considered is, whether
she could recover damages on account of fright alone or
the consequences of it. This is not an open question in
Pennsylvania. In Huston v. Freemansburg Borough, 212
Pa. 548, it appeared that the defendant in excavating a
hole in the street exploded some dynamite, and it was
claimed that the shock of the explosion so affected the
plaintiff's husband, who was recovering from typhoid
fever, that he died within two weeks. On appeal from
the refusal to take off a compulsory nonsuit the court,
through Chief Justice MITCHELL, said: "The learned
judge below not admitting, but conceding for the purpose
of his view, that there was evidence of negligence and of
proximate cause, sufficient to carry the case to the jury,
nevertheless refused to take off the nonsuit. We do not
concede either point, and this case might be affirmed on
either. But we have had the case reargued before the
full court, to settle finally the main question that there
can be no recovery of damages from fright or other merely
mental suffering unconnected with physical injury." The

chief justice, after referring to Fox v. Borkey, 126 Pa. 164; Ewing v. Pittsburg, etc., Railway Co., 147 Pa. 40, and Linn v. Duquesne Borough, 204 Pa. 551, as having really decided and enforced the principle, speaks of Ewing v. Pittsburg, etc., Railway Co. as a particularly strong case, "for it was decided on a demurrer to a statement setting forth a collision of cars through the negligence of the defendant, by which the cars were overturned and thrown from the track against the dwelling house of the plaintiff, subjecting her to great fright, fear and nervous excitement and distress, whereby she became sick and disabled from her usual work, etc. The question was thus squarely presented on its own merits, stripped of all complicating circumstances, and this court said unanimously per curiam that there was no cause of action." In view of the foregoing authoritative declarations, we are right in saying that the question is no longer an open one in this state; indeed, it was so declared in Huston v. Freemansburg Borough. But it is urged that the rule is not applicable in an action by a passenger against a common carrier. In view of this contention, it is well to notice the reason of the rule. In Linn v. Duquesne Borough, 204 Pa. 551, the present chief justice refers to the case of Spade v. Lynn & Boston Railroad Co., 168 Mass. 285, as holding that there can be no recovery for fright and mental suffering, nor for bodily injury resulting solely from mental distress, and says that in the last-named case on a review of the authorities on the subject the exemption from liability is based not on the ground that fright and anxiety do not constitute actual injury or that mental and physical effects may not be directly traceable as a consequence of unintentional negligence, but on the ground that in practice it is impossible to administer any other rule without opening a wide door to unjust claims which cannot satisfactorily be met. The same idea is conveyed in the opinion in Huston v. Freemansburg Borough. Having regard to the reason of the rule, we discover no sound principle upon which to make a distinction, so far as its

applicability is concerned, between negligence by a common carrier in the carriage of passengers and other negligence. In the present case a presumption of negligence arose from the collision, but that is as far as the presumption went; it was still incumbent on the plaintiff to adduce evidence from which the causal connection between the defendant's negligence and the conditions from which she suffered could be inferred with reasonable certainty. The rule under consideration comes into operation to prevent the drawing of that inference. Great reliance is placed by appellant's counsel upon Hess v. American Pipe Manufacturing Co., 221 Pa. 67. But that case reaffirms the rule as above stated and simply decides that the case could not be taken from the jury, because there was some evidence that the plaintiff received direct physical injuries from the blast apart from fright. She testified positively that she was thrown on a chair by the force of the concussion, and this testimony had some support from the fact that several windowpanes were broken and some particles of glass struck her in the face. The case is so plainly distinguishable from the present that we need not discuss it further.

The learned judge of the common pleas entered judgment for the defendant non obstante veredicto upon the authority of Huston v. Freemansburg Borough. He could not have done otherwise under the evidence without coming in direct conflict with the rule there emphatically stated.

Since the foregoing opinion was written, the opinion of the Supreme Court in Morris v. Lackawanna and Wyoming Valley Railroad Co., not yet reported, has come to our notice. There the rule was applied in an action by a passenger against a common carrier.

The judgment is affirmed.