Bosley et ux., Appellants, *v.* Andrews.

Argued April 10, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Enoch C. Filer,* with him *Guy Thorne,* for appellants.

*Willam J. Joyce,* with him *Martin E. Cusick, Cyril T. Garvey,* and *Weisen, Cusick, Madden, Joyce, Acker & McKay,* for appellee.

OPINION BY WOODSIDE, J., October 7, 1957:

Oliver H. Bosley and his wife, Mary, are seeking to recover damages from Dale Andrews, owner of a neighboring farm, whose cattle strayed on to the Bosley farm.

The complaint in trespass contained three counts. In the first count, the plaintiffs seek to recover for damages to their crops; in the second, the wife seeks to recover for injuries to her person; and in the third, the husband seeks to recover for expenses and loss of companionship due to his wife's injuries.

At a prolonged trial the court granted a compulsory nonsuit as to the last two counts but submitted the

first count to the jury, which found a verdict for the plaintiffs in the amount of $179.99. The plaintiffs filed a motion for a new trial alleging that the entry of the compulsory nonsuits was error. Upon failure of the court below to grant a new trial the plaintiffs appealed.

The evidence, which for the purposes of our consideration must be viewed in the light most favorable to the plaintiffs, *Gordon v. London & Lancashire Indemnity Co.*, 180 Pa. Superior Ct. 45, 117 A. 2d 778 (1955), shows that on numerous occasions the cattle of the defendant trespassed upon the land of the plaintiffs and damaged their crops. It further shows that on April 10, 1950, eight Hereford cows and one bull belonging to the defendant, entered the plaintiffs' premises from the highway through their front yard and peach orchard. The plaintiffs' daughter, Mrs. Turner, and her small boy, with the aid of a dog, attempted to drive the cattle off of the plaintiffs' land. After telephoning to the defendant's farm to have someone come for the cattle, the plaintiff, Mary Bosley, went to join her daughter. As she did so, the bull put his head down and charged her. She did not see the bull until her daughter shouted to her, at which time it was only about 25 feet away. Mrs. Bosley turned to run, took a few steps, "maybe five," suffered a heart attack, and fell unconscious to the ground. Before the bull reached her, it was driven away by the dog. The plaintiff was not touched by the bull or any of the cows.

Ordinarily, a possessor of livestock which intrude upon the land of another is liable for their intrusion and for any harm done while upon the land to its possessor or a member of his household although the possessor of the livestock exercised the utmost care to prevent them from intruding. Restatement, Torts, §504; *Rossell v. Cottom*, 31 Pa. 525 (1858); *Hilton v. Overly,*

69 Pa. Superior Ct. 348 (1918); *Ramsey v. Martin,* 45 Pa. Superior Ct. 645 (1911); *Troth v. Wills,* 8 Pa. Superior Ct. 1 (1898). This, however, is not the issue presented to us. The defendant does not here question his liability for damages to the plaintiffs' crops. Nor does he seriously question his liability for physical injuries to the wife-plaintiff's person had the bull come into contact with her. His contention is that she is seeking to recover for injuries resulting from fright and nervous shock unaccompanied by physical contact, and that for these injuries he is not liable. The court below agreed with this contention. We do, too.

There are few rules more firmly settled by our Supreme Court than that "There can be no recovery for injuries resulting from fright, or a nervous shock, unaccompanied by physical injuries." *Koplin v. Louis K. Liggett Co.,* 322 Pa. 333, 335, 185 A. 744 (1936). The Court there said that this rule "is settled in this State and no longer open for discussion."

The rule has been applied in numerous cases: *Huston v. Freemansburg,* 212 Pa. 548, 61 A. 1022 (1905); *Fox v. Borkey,* 126 Pa. 164, 17 A. 604 (1889); *Morris v. Lackawanna & Wyoming Valley Railroad Co.,* 228 Pa. 198, 77 A. 445 (1910), and others cited elsewhere in this opinion.

Within the last two years Mr. Justice CHIDSEY said in *Potere v. Philadelphia,* 380 Pa. 581, 589, 112 A. 2d 100 (1955) that "in the absence of physical injury or physical impact, mental or emotional distress is not the subject of legal redress," and Mr. Justice BELL said in *Gefter v. Rosenthal,* 384 Pa. 123, 125, 119 A. 2d 250 (1956). "There can be no recovery for humiliation, disappointment, anxiety, or mental suffering, or emotional distress when unconnected with physical injury or physical impact."

The rule was stated, but recovery allowed because of physical injuries or impact, in *Hess v. American Pipe Mfg. Co.*, 221 Pa. 67, 70 A. 294 (1908) where the plaintiff was cut by flying glass and thrown on a chair by the force of a concussion; and in *Applebaum v. Philadelphia Rapid Transit Co.*, 244 Pa. 82, 90 A. 462 (1914) where the plaintiff was in an automobile which collided with another vehicle, and her side and shoulder were struck by the window sill and side of the car; and in *Kramer v. Pittsburgh Rys. Co.*, 247 Pa. 352, 93 A. 461 (1915) where the plaintiff suffered a spinal injury in a street-car accident; and in *Howarth v. Adams Express Co.*, 269 Pa. 280, 282, 112 A. 536 (1921) where the plaintiff suffered "an actual physical injury to her back" when a truck hit her home; and in *Hess v. Philadelphia Transportation Co.*, 358 Pa. 144, 147, 148, 56 A. 2d 89 (1948) where the plaintiff suffered an electrical shock, which is considered "a direct physical and personal assault."

In the case before us it is clear from the pleadings and the evidence that the injuries for which the plaintiffs are seeking to recover were those suffered by reason of fright and shock.

The plaintiffs allege in the complaint that ". . . the plaintiff, Mary Louise Bosley . . . attempted to drive the cattle from the premises of the plaintiffs, and when so doing, the bull charged upon her and she ran and *fell from fright* . . . That *by reason of fright and shock she suffered an injury* to her heart and nervous system." (Emphasis ours)

Mary Louise Bosley testified: "(My daughter) was driving (the cattle) out of the wheat field and . . . I was walking up towards where the little boy was and she screamed and said there was a bull after me . . . I turned around and looked, and he was coming at me with his head down, and I started to run, but I thought

I could not get my legs to go and I choked up and I collapsed, . . ."

Mrs. Bosley's physician testified concerning her physical condition as follows: "I feel that this patient, Mrs. Bosley, had arteriosclerotic heart disease or narrowing of the blood vessels of the heart before the episode of the bull . . . Mrs. Bosley got along very well with her normal duties around the house, without any symptoms, without any heart failure, but with the running, the chasing and the fear that was caused when the bull chased her, it precipitated her first attack of coronary insufficiency which caused her severe pain and her coronary cardiac insufficiency which caused early heart failure and from then on, she had her subsequent attacks which were directly based on that. Now, if she never would have had that precipitating factor, she may have gone along for a long period of time without any symptoms, and without any precipitation of such an episode."

The appellants contend in their brief that "it was error to grant (the compulsory nonsuit) in this case owing to the evidence of the injury to her heart suffered by Mary Louise Bosley in her effort to escape the position she was placed in by the negligence of the defendant in allowing his bull to run at large." The injury to the heart suffered by Mary Louise Bosley, according to the pleadings, was caused by fright and shock. There can be no recovery for fright alone *or the consequence of it*. *Reardon v. Philadelphia Rapid Transit Co.*, 43 Pa. Superior Ct. 344, 349 (1910); *Linn v. Duquesne Borough*, 204 Pa. 551, 554, 54 A. 341 (1903).

There is no evidence that the wife-plaintiff was injured when she fell. But even had she been injured from the fall, that would not be the type of "physical injury or physical impact" which would enable her to recover damages. In *Chittick v. Philadelphia Rapid*

*Transit Co.,* 224 Pa. 13, 17, 73 A. 4 (1909) the plaintiff was frightened, fell from her chair to the floor and suffered bruises. The court held that since her bruises "were not occasioned by any material or other force prior to the fall," she could not recover for her injuries which were considered to have been caused by "nervous shock or terrible fright."

It makes no difference that the plaintiff was on her own premises, and that the defendant's cattle were trespassing upon and damaging her property at the time she was frightened. In *Ewing v. Pittsb. C. & St. L. Ry. Co.,* 147 Pa. 40, 23 A. 340 (1892) the defendant's railway cars left the tracks and struck the home of the plaintiff, which she was occupying at the time. She suffered no physical contact, but was so frightened that she suffered permanent injury to her nervous system. The court held that mere fright occasioned by such an accident is not actionable even when it produces permanent injury to the nervous system.

The action here is for injuries to the wife-plaintiff's heart and nervous system suffered by reason of fright and shock. The fright and shock were unaccompanied by physical impact, or by physical injury except such as was the consequence of the fright, and, therefore, as the above cases clearly show, there can be no recovery.

The cases which established and applied the rule governing this case were decided by the Supreme Court. When our Supreme Court has "settled" a rule, it is the duty of all other courts in this Commonwealth to follow it, and to apply it to all cases to which it is applicable. It is not within our jurisdiction to establish a different rule because the courts of some other states, or some teachers, or authors, or committees or groups, however much we may respect their reasoning, think our Supreme Court was wrong. It is not for

us to decide a case on the speculation that the Supreme Court might not *now* apply the rule which it has termed "settled".

We are not here dealing with a case of first impression. It is impossible to demonstrate by a fair analysis of the facts of this case any characteristics distinguishing it from the cases in which the Supreme Court has refused recovery. If each court is to be free to decide cases on the basis of what its individual members think is desirable in the particular case, without applying the legal principles established by the highest court, then we have traded a government of laws for a government of men.

Judgment affirmed.

---

DISSENTING OPINION BY ERVIN, J.:

The plaintiffs, husband and wife, brought this action to recover damages caused by the negligence of the defendant in failing to restrain his cattle, including a Hereford bull. The complaint in trespass contained three counts. In the first count the plaintiffs seek to recover for damages to their crops; in the second the wife seeks to recover for injury to her person; and in the third the husband seeks to recover for expenses and loss of companionship due to his wife's injuries. The jury returned a verdict in favor of the plaintiffs on the first count. The trial judge directed a verdict for the defendant on the second and third counts. Upon failure of the court below to grant plaintiffs' motion for a new trial, this appeal was taken.

On numerous occasions the cattle of the defendant had trespassed upon the land of the plaintiffs and damaged their crops. On April 10, 1950 eight Hereford cows and one bull, belonging to the defendant, entered the plaintiffs' premises. The plaintiffs' daughter, Mrs.

Turner, and her small boy, with the aid of a dog, attempted to drive the cattle off the plaintiffs' land. After telephoning to the defendant's farm to have someone come for the cattle, the plaintiff, Mary Bosley, went out to assist in driving the cattle from her property. She did not know that there was a bull in the herd. Mrs. Turner called to her that there was a bull after her, whereupon she turned around and saw the bull about 25 feet away, approaching her with its head down. She thereupon started to run when, due to "the running, the chasing and the fear," she collapsed and fell to the ground. The dog diverted the bull and prevented plaintiff from being gored. The bull did not come into contact with the plaintiff. The daughter revived the mother and called a physician.

Dr. Gilbert H. Diehl, who arrived at the home 45 minutes later, in his testimony explained that the episode with the bull precipitated a coronary insufficiency; that she had arteriosclerosis before the episode but got along very well in her usual duties until "the running, the chasing and the fear" precipitated the heart attack. Dr. A. C. Ernstone, heart specialist at the Cleveland Clinic, testified as follows: "The episode with the bull did not cause the coronary arteriosclerosis, but it does constitute the trigger mechanism that brought the symptoms into clinical prominence." It was the episode with the bull that made her heart condition manifest.

It is the law in this State that in the absence of physical injury or physical impact, mental or emotional distress is not the subject of legal redress. However, if a plaintiff sustains bodily injuries, even though trivial or minor in character, which are accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff, then mental suffering is a legitimate element

of damages. *Potere v. Phila.,* 380 Pa. 581, 589, 112 A. 2d 100.

Section 436 (2) of Restatement, Torts, which is contrary to the Pennsylvania rule, is as follows: "If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

"*Caveat to Subsection* (2) : The Institute expresses no opinion that the unreliability of the testimony necessary to establish the causal relation between the actor's negligence and the other's illness or bodily harm may not make it proper for the court of a particular jurisdiction to refuse, as a matter of administrative policy, to hold the actor liable for harm to another which was brought about in the manner stated in this Subsection.

". . . .

"*Comment on Subsection* (2) :

"b. The statement in this Subsection applies when the actor's conduct is negligent because of the risk that it will cause bodily harm by immediate impact or in any other manner except through the internal operation of a possible or probable emotional disturbance, when the other by good chance escapes the threatened harm but is so frightened or shocked as to miscarry or otherwise to be made ill.

"c. To make the statement in this Subsection applicable, the emotional disturbance must be the immediate result of the actor's negligent conduct. If it is fear, it must be fear of the harm the likelihood of which makes the actor's conduct negligent. The fear may be, and usually is, fear of immediate harm, but

if the negligence results in a long continued peril, the illness may be caused by the cumulative effects of the anxiety and suspense caused by the other's constant subjection to it. If the emotional disturbance is shock, the shock must be due to the other's witnessing the actor's negligence or its immediate consequences. Subsequent brooding over the actor's misconduct or the danger in which it had put the other is not enough to make the negligent actor liable for an illness so brought on.

"*Illustration*:

"3. A so negligently drives a horse car of the X Traction Company that the horses get out of hand and are not stopped until they stand one on either side of B who is waiting to take the car as a passenger. The horses do not touch B nor does she faint or fall, but she sustains a severe shock which brings on a miscarriage. The X Traction Company is liable to B, except in jurisdictions in which the considerations stated in the caveat to Subsection (2) are regarded as justifying a denial of liability in such cases.

"*Comment*:

"d. *Foreseeability of bodily harm or illness through emotional. disturbance*. Since, unlike the conduct of the actor in the situation dealt with in Subsection 1, the negligence of the actor's conduct does not depend upon its recognizable tendency to so affect the other's mind or emotions as thereby to cause bodily harm, the fact that the actor should realize that the other's fright may be dangerous to his health, while essential to liability under Subsection 1, is immaterial here. It is enough that, in view of the other's actual, as distinguished from his reasonably foreseeable, emotional stability or instability and physical condition, it is not extraordinary that the emotional distress should have brought on the illness. While it is necessary that the

negligent conduct shall be a substantial factor in bringing about the fright and that the fright should also be a substantial factor in bringing about the illness, it is not necessary that the fright should be a probable result of the negligence nor the illness a probable result of the fright. It is enough that it is a 'natural' result, using that word as denoting that men of ordinary experience and judgment would not regard the result as extraordinary, after expert testimony has given them the medical information necessary to enable them to form an intelligent opinion."

Section 436 in the 1948 Supplement to Restatement of the Law is as follows: "PHYSICAL HARM RESULTING FROM EMOTIONAL DISTURBANCE.

"i. Caveat to Subsection (2): Delete the Caveat to Subsection (2).

"ii. Illustration 3: Substitute for original Illustration 3 the following Illustration 3:

"3. A so negligently drives a horse car of the X Traction Company that the horses get out of hand and are not stopped until they stand one on either side of B who is waiting to take the car as a passenger. The horses do not touch B nor does she faint or fall, but she sustains a severe shock which brings on a miscarriage. The X Traction Company is liable to B.

"Change: The following words from the last sentence of original Illustration 3 have been deleted: '. . . except in jurisdictions in which the considerations stated in the Caveat to Subsection (2) are regarded as justifying a denial of liability in such cases.'

"Reason for Changes i and ii: This Caveat was drafted in 1931 and appeared in Tentative Draft No. 8, Section 311. At that time the weight of authority was in accord with Subsection (2). Since then the trend has continued to run heavily in favor of imposing liability. Fear of not securing trustworthy evi-

dence has not deterred courts from accepting the Restatement rule. The able and comprehensive opinion of Chief Justice MALTBIE in Orlo v. Connecticut Co., 1941, 21 A. 2d 402, 128 Conn. 231, thoroughly discusses the problem and refers to the Restatement and to many decisions. In rejecting the idea expressed in the Caveat to Subsection (2), Chief Justice MALTBIE said: 'There is hardly more risk to the accomplishment of justice because of disparity in possibilities of proof in such situations than in those where mental suffering is allowed as an element of damage following a physical injury or recovery is permitted for the results of nervous shock provided there be some contemporaneous slight battery or physical injury. Certainly it is a very questionable position for a court to take, that because of the possibility of encouraging fictitious claims compensation should be denied those who have actually suffered serious injury through the negligence of another.'

"The rule contrary to the Restatement, formerly in force in New York, has been limited by Comstock v. Wilson, 1931, 177 N. E. 431, 257 N. Y. 231, 76 A.L.R. 676, which allowed a recovery in a suit for wrongful death on the following facts: The decedent was a passenger in an automobile which collided with defendant's negligently operated automobile. Decedent received no personal injuries in the collision, but while she was standing on the highway, writing down defendant's name, she fainted, fell to the sidewalk, fractured her skull and died twenty minutes later. In view of the trend in favor of Section 436(2), accompanied by the tendency in jurisdictions which have a contrary rule to narrow the scope of their rule, the Institute should accept its rule without reservation. The large number of States which follow the Restatement rule have shown no inclination to depart from it so appar-

ently the supposed 'unreliability of the testimony necessary to establish the causal relation' has not proved to be a serious problem."

The reason for the Pennsylvania rule is well expressed in *Huston v. Freemansburg Boro.*, 212 Pa. 548, at page 550, 61 A. 1022, as follows: "In the last half century the ingenuity of counsel, stimulated by the cupidity of clients and encouraged by the prejudices of juries, has expanded the action for negligence until it overtops all others in frequency and importance, but it is only in the very end of that period that it has been stretched to the effort to cover so intangible, so untrustworthy, so illusory and so speculative a cause of action as mere mental disturbance. It requires but a brief judicial experience to be convinced of the large proportion of exaggeration and even of actual fraud in the ordinary action for physical injuries from negligence, and if we opened the door to this new invention the result would be great danger, if not disaster to the cause of practical justice: Spade v. Lynn & Boston, R. R. Co., 168 Mass. 285; Mitchell v. Rochester Ry. Co., 151 N. Y. 107." The New York case, *Mitchell v. Rochester Ry. Co.*, relied upon by our Supreme Court in the *Huston v. Freemansburg Boro.* case has been reversed or very severely modified in that State by a very able Court, composed of CARDOZO, POUND, CRANE, KELLOG, O'BRIEN, HUBBS and LEHMAN, in the case of *Comstock v. Wilson*, 257 N. Y. 231, 177 N.E. 431, 76 A.L.R. 676.[1] So far as we have been able to ascertain, neither of the appellate courts of this State has ever considered Section 436 (2) of Restatement, Torts. This section is peculiarly applicable to the present case and we believe that it is supported by sound reasoning. The

---

[1] For a more comprehensive compilation of the cases on this subject, see 11 A.L.R. 1138; 40 A.L.R. 986; 76 A.L.R. 684 and 98 A.L.R. 402.

reasoning is supported by nearly all of the textbook authorities in the country and certainly by a great majority of the state courts. In view of this modern trend it seems entirely fitting that Pennsylvania should reconsider its position.

The present case can, however, be distinguished from our prior cases.

The plaintiffs in the present case are not endeavoring to collect damages for emotional or mental distress alone. They are endeavoring to collect damages which arose as a result of the heart damage which occurred immediately and which has continued since. The heart attack was caused by the emotional upset or fright, coupled with the physical strain. The extra pressure put upon the heart by the emotional as well as the physical strain caused the physical failure of the heart. This was a physical injury and not just a mere mental or emotional disturbance unconnected with any physical injury. The real question is whether the fright (caused by the charging bull) was the proximate cause of the physical injury to the heart. All of the medical testimony clearly indicates that it was. There is no good reason why this medical testimony should not be accepted and believed. We accept similar testimony in many other cases. Three essential elements are necessary to establish a case: (1) breach of a duty, (2) damage and (3) causation. (1) The defendant failed to keep his cattle, including the bull, a dangerous animal, confined. Defendant's cattle had trespassed upon plaintiffs' property a number of times before. Defendant had knowledge of these trespasses. It was a breach of duty for defendant not to restrain his animals from trespassing upon plaintiffs' property. (2) The damage to plaintiff's heart was clearly proved by competent medical testimony and the medical expenses incident thereto were definitely established. (3) The

medical testimony clearly established that the heart attack was caused by the fright, nervous shock and physical effort incident upon and directly connected with the effort of plaintiff to escape the charging bull.

Furthermore, all damages which could be proved with reasonable certainty and which logically flowed from the trespass of these animals upon plaintiffs' property should be allowed in order to do justice to these parties.

The physical injury which occurred to the plaintiff's heart should be considered as an item of consequential damages. Section 504 (1), Restatement, Torts, provides: "Except as stated in Subsection 2 and in Section 505, a possessor of livestock which intrude upon the land of another is liable for their intrusion and for any harm done while upon the land to its possessor or a member of his household although the possessor of the livestock exercised the utmost care to prevent them from intruding. . . . Comment on Subsection (1) . . . e. Extent of liability. The possessor of livestock which stray upon the land of another is liable to the same extent as though he had intentionally driven them thereon. The earlier cases express this by saying that 'an owner trespasses with his cattle.' This being so, the possessor of straying livestock is liable for their intrusion even though they do no harm. Furthermore, he is liable for any harm which they do while upon the land to any legally protected interest of the possessor or a member of his household even though the harm is of a sort which the possessor of the livestock had no reason to expect that they would do (see Section 380). Thus, he is liable for harm done to the person of the possessor of the land, for harm to crops, structures or chattels thereon and for harm done to any person, such as a wife or a minor child, in whose security the possessor of the land has a legally

protected interest. In addition, he is liable to the members of the possessor's household for harm done in like manner to their persons or chattels. . . ." See also Pa. Annotations to Restatement, Torts, Section 504, comment e, which shows that Section 504 is the rule of law followed in Pennsylvania. In *Troth v. Wills*, 8 Pa. Superior Ct. 1, at page 5, the Court said: "If an animal injure a person lawfully trying to prevent it from trespassing, the owner should be held liable, though the injury be one which the animal is not prone to commit. In such case the mischievous act is closely associated with the primary trespass, and in fact grows directly out of it. The same principle must govern if a person be injured in trying to prevent the continuance of a trespass, or of acts forming an aggravation of it."

The fact that the bull was trespassing upon the plaintiffs' land, and that it was approaching plaintiff with its head down, is just one more guarantee of the reality of a complete tort. There can be no doubt that the plaintiff could have recovered if the bull had caught up with her and had butted her, even gently, and there can be no doubt that she would have recovered, not merely for the bruises resulting from being gently butted, but also for any heart condition which resulted from her emotional excitement. Likewise, there can be no doubt that if, in running away from the bull, she had fallen and had damaged her eye by running a weed into it, she could have recovered for that damage. To say that when she runs from the same trespassing bull and falls and suffers a heart attack, she cannot recover for the heart injury is making a distinction which cannot be justified.

I would reverse the judgment and grant a new trial.

HIRT and WATKINS, JJ. join in this dissent.